# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GRAMERCY EMERGING<br>MARKETS FUND, BALKAN<br>VENTURES LLC, AND RILA<br>VENTURES LLC,<br><br>    Plaintiffs Below,<br>    Appellants,<br><br>        v.<br><br>ALLIED IRISH BANKS, P.L.C.,<br>AND THE BULGARIAN<br>AMERICAN ENTERPRISE FUND,<br><br>    Defendants Below,<br>    Appellees. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 49, 2017<br><br>Court Below: Court of Chancery<br>of the State of Delaware<br><br>C.A. No. 10321–VCG |

Submitted: September 13, 2017
Decided:   October 27, 2017

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices, constituting the Court *en Banc*.

Upon appeal from the Court of Chancery. **AFFIRMED**.

Stephen B. Brauerman, Esquire, Sara E. Bussiere, Esquire, BAYARD, P.A., Wilmington, Delaware; Sean F. O'Shea, Esquire, (*argued*), Michael E. Petrella, Esquire, Amanda L. Devereux, Esquire, Brian B. Alexander, Esquire, BOIES SCHILLER FLEXNER LLP, New York, New York, *Attorneys for Appellants, Gramercy Emerging Markets Fund, Balkan Ventures LLC, and Rila Ventures LLC.*

Kevin R. Shannon, Esquire, Christopher N. Kelly, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Walter C. Carlson, Esquire, (*argued*), Elizabeth Y. Austin, Esquire, SIDLEY AUSTIN LLP, Chicago, Illinois, *Attorneys for Appellee, Allied Irish Banks, P.L.C.*

Kenneth J. Nachbar, Esquire, Ryan D. Stottman, Esquire, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Christopher Landau, P.C.,

KIRKLAND & ELLIS LLP, Washington, D.C.; Brian D. Sieve, P.C., Jessica L. Staiger, Esquire, KIRKLAND & ELLIS LLP, Chicago, Illinois; Jeremy M. Feigenbaum, Esquire, (*argued*), KIRKLAND & ELLIS LLP, New York, New York, *Attorneys for Appellee, Bulgarian-American Enterprise Fund*.

**STRINE**, Chief Justice:

In this case, a Cayman Islands investment fund and two of its Delaware subsidiaries (collectively "Gramercy") sue a bank organized under Delaware law with offices in Illinois and Bulgaria (Bulgarian-American Enterprise Fund, or "Bulgarian-American") and an Irish bank headquartered in Dublin (Allied Irish Banks, P.L.C., or "Allied") over claims they admit arise under Bulgarian law and have no connection to activity that took place in Delaware. Delaware is the second forum in which Gramercy sought to press its Bulgarian claims. Like Delaware, the first forum was not Bulgaria, it was Illinois, where: (i) after extensive discovery and briefing on the issue of *forum non conveniens*, the Circuit Court of Cook County in Chicago granted a motion to dismiss; (ii) the Illinois Appellate Court unanimously affirmed the Circuit Court's dismissal; and (iii) the Illinois Supreme Court denied Gramercy's petition for leave to appeal.

After its suit reached a dead-end in Illinois, Gramercy, rather than going to Bulgaria and suing in the forum whose laws govern its claims and where its investment in Bulgarian-American took place, then sued in Delaware. Bulgarian-American and Allied filed a motion to dismiss, arguing Bulgaria was the appropriate forum for the litigation. In granting Bulgarian-American and Allied's motion and holding that Gramercy's suit did not merit the overwhelming hardship standard afforded to first-filed actions under *Cryo-Maid*, the Court of Chancery was forced to address confusing arguments about this Court's *forum non conveniens* precedent,

in particular the relationship among this Court's longstanding decisions in *Cryo-Maid*[1] and *McWane*,[2] and a more recent decision, *Lisa, S.A. v. Mayorga*.[3]

The fact pattern in this case diverges from the scenarios we usually see facing motions to dismiss for *forum non conveniens*: (1) a first-filed Delaware action with no pending descendants, which implicates *Cryo-Maid*'s overwhelming hardship standard; and (2) a Delaware action with a predecessor pending elsewhere, which implicates *McWane*'s discretionary standard. Likely for this reason, the Court of Chancery felt it had just two options for its legal analysis—*Cryo-Maid* or *McWane*—and looked to *Lisa* for guidance in choosing between the two.

Bulgarian-American and Allied contended that *Lisa*, rather than being a very fact-specific ruling, set forth broad principles, principles about which the parties disagree. Although Gramercy interpreted *Lisa* to apply the *McWane* standard only to cases in which the no longer pending first-filed case was decided on the merits, Bulgarian-American and Allied interpreted *Lisa* as extending *McWane* to all cases in which the first-filed case was decided, regardless of whether that decision was on the merits. The heart of the parties' disagreement was this: when a first-filed suit is procedurally dismissed, is a motion to dismiss for *forum non conveniens* in a later-filed Delaware suit subject to the overwhelming hardship standard?

---

[1] *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681 (Del. 1964).
[2] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281 (Del. 1970).
[3] *Lisa, S.A. v. Mayorga*, 993 A.2d 1042 (Del. 2010).

The Court of Chancery correctly held that the Delaware action was not first-filed, and that to obtain dismissal on *forum non conveniens* grounds, Bulgarian-American and Allied did not need to show overwhelming hardship. But, because the Illinois case was no longer pending, and was not dismissed on the merits like the first-filed action in *Lisa*, *McWane* was no longer the proper focus for the Court of Chancery's analysis.

The Illinois action had relevance in the *forum non conveniens* analysis because it meant that analysis would not be tilted in Gramercy's favor under the overwhelming hardship standard. But, because the Illinois action was not dismissed on its merits, but instead for *forum non conveniens*, it should not have shifted the Court's focus from *Cryo-Maid* to *McWane*. Between *Cryo-Maid*'s overwhelming hardship standard and *McWane*'s discretionary standard lies an intermediate analysis that applies to situations like Gramercy's: a straightforward assessment of the *Cryo-Maid* factors, where dismissal is appropriate if those factors weigh in favor of that outcome.

**I.**

To understand how this case was presented before the Court of Chancery, it is useful to consider the three key cases that framed the parties' duel over overwhelming hardship. We begin with the first, *Cryo-Maid*.

3

# A.

In *Cryo-Maid*, this Court considered whether to stay a first-filed Delaware action in favor of an action pending in Illinois. In deciding to stay the Delaware action, this Court considered the following factors: "(1) [t]he relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the permises [sic], if appropriate; . . . (4) all other practical problems that would make the trial of the case easy, expeditious and inexpensive;" and (5) "whether or not the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction."[4] "A sixth [factor]—the pendency or nonpendency of a similar action in another jurisdiction—was added to the *Cryo-Maid* framework by subsequent decisions."[5] Together, these factors have come to form the core of Delaware's traditional *forum non conveniens* analysis.

Typically, when *Cryo-Maid* is invoked, the plaintiff has chosen Delaware as its first forum. When that is the case, for dismissal to be granted, the *Cryo-Maid* factors must weigh "overwhelmingly in favor of the defendant."[6] The "short-hand

---

[4] *Cryo-Maid*, *supra* note 1, at 684.

[5] 1-5 DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 5.02 (2017). Although the addition of this factor is formally attributed to later cases, *Cryo-Maid* itself discussed "the pendency of a similar action in another jurisdiction" in making its determination to stay the Delaware action at issue in the case. *Cryo-Maid*, *supra* note 1, at 683.

[6] *E.g. Kolber v. Holyoke Shares, Inc.*, 213 A.2d 444, 447 (Del. 1965).

phrase 'overwhelming hardship' emerged" from the post *Cryo-Maid* case law, reflecting our courts' reluctance to lightly disturb a plaintiff's first choice of fora.[7] When a case first-filed in Delaware is challenged by a motion to dismiss for *forum non conveniens*, "[d]ismissa[l] on the basis of *forum non conveniens* [is] appropriate only in the rare case involving undue hardship and inconvenience."[8]

## B.

In *McWane*, this Court considered whether or not to stay a later-filed Delaware action in favor of a first-filed Alabama action. In deciding to stay the Delaware action, this Court distinguished the *forum non conveniens* analysis for first-filed Delaware actions from the *forum non conveniens* analysis for later-filed Delaware actions related to an action pending in another jurisdiction. As *McWane* clarified, "in view of [a] prior action pending," Delaware courts considering a motion to dismiss for *forum non conveniens* should ask whether "there are facts and circumstances sufficient to . . . grant the stay within the range of the Court's discretion."[9] As this Court recently summarized:

> Delaware courts considering a motion to stay or dismiss in favor of a previously filed action have applied *McWane*'s three-factor test: (1) is there a prior action pending elsewhere; (2) in a court capable of doing prompt and complete justice; (3) involving the same parties and the same issues? If all three criteria are met, *McWane* and its progeny

---

[7] *IM2 Merch. & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at *1 (Del. Ch. Nov. 2, 2000).
[8] WOLFE & PITTENGER, *supra* note 5, § 5.02.
[9] *McWane*, *supra* note 2, at 283.

establish a strong preference for the litigation of a dispute in the forum in which the first action was filed.[10]

When a case is not first-filed in Delaware and its predecessor remains pending, *McWane* applies, and Delaware courts "typically will defer to [the] first-filed action in another forum if that action involves substantially the same parties and issues as the litigation pending in Delaware, and will stay the later-filed Delaware action pending adjudication of the issues in the competing forum."[11]

Although the evidentiary burden a moving party faces under *Cryo-Maid*'s overwhelming hardship analysis is more demanding than what that party would face under *McWane*'s discretionary analysis, the relevant considerations under the two analyses are related. "In addition to the comity considerations articulated in *McWane*, the Court of Chancery, in assessing motions to stay Delaware litigation under the first-filed rule, frequently analyze[s] the same 'practicality' factors traditionally applied under the *forum non conveniens* doctrine."[12] In fact, in *McWane* itself, this Court recognized five of the six *Cryo-Maid* considerations in deciding to stay the Delaware action in favor of the first-filed Alabama action that was still pending.[13]

---

[10] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246, 1252 (Del. 2015) (internal citation omitted).
[11] WOLFE & PITTENGER, *supra* note 5, § 5.01.
[12] *Id.*
[13] *McWane*, *supra* note 2, at 283.

It is no coincidence that *McWane* discussed the *Cryo-Maid* factors in its analysis of the circumstances compelling a stay in the case. "*McWane* does not hold that consideration of the *forum non conveniens* factors is inappropriate in connection with the analysis mandated by the first-filed rule. Instead, *McWane* holds that imposing the same high burden on defendants in the first-filed context as in the *forum non conveniens* context and failing to consider principles of comity in conjunction with the first-filed analysis constitutes error."[14]

*McWane* draws on *Cryo-Maid*'s factors because both tests are rooted in *forum non conveniens* doctrine. "[W]hat distinguishes the application of [the *forum non conveniens*] factors in the *McWane* [and *Cryo-Maid*] contexts is 'the background presumption against which the elements are applied.'"[15] Under *Cryo-Maid*, defendants must establish overwhelming hardship for Delaware courts to grant dismissal. Under *McWane*, Delaware courts have greater discretion in determining whether a stay or dismissal is proper.

## C.

In *Lisa*, this Court considered whether a later-filed Delaware action whose predecessors were no longer pending still triggered *McWane*'s discretionary analysis. *Lisa* was an unusual case because the Delaware action was the fourth

---

[14] WOLFE & PITTENGER, *supra* note 5, § 5.01.

[15] *Id.* (citing *Apple Computer, Inc. v. Exponential Tech., Inc.*, 1999 Del. Ch. LEXIS 9, at *51 (Jan. 21, 1999).

action filed by Lisa, S.A., which had previously filed two actions in the Florida state courts, and one in the Florida federal courts.[16]

The Court of Chancery previously stayed Lisa's Delaware action pending the resolution of the 1998 Florida Action, the first of its three predecessors in Florida.[17] This made sense because Lisa's Delaware action was brought to ensure that it could obtain relief in the 1998 Florida Action: the Delaware suit involved a challenge to corporate actions that Lisa contended unfairly threatened its standing to gain relief in that action.[18]

The 1998 Florida Action was later dismissed with prejudice and the other two Florida actions were dismissed for *forum non conveniens*.[19] And the Florida Third District Court of Appeal affirmed the 1998 Florida Action's dismissal.[20]

It was only after all three of the Florida actions were dismissed that the Court of Chancery dismissed the Delaware case on, among other grounds, "*forum non conveniens*."[21] In so doing, the Court of Chancery assessed the *Cryo-Maid* factors,

---

[16] *Lisa, S.A. v. Mayorga*, 2009 WL 1846308, at *3 (Del. Ch. June 22, 2009), *aff'd*, 993 A.2d 1042 (Del. 2010).

[17] "[T]he Court of Chancery stayed the Delaware action in favor of the then-pending first-filed 1998 Florida Action, and held the motion to dismiss [for *forum non conveniens*] in abeyance pending the outcome of Lisa's appeal in that Florida action." *Lisa, supra* note 3, at 1045.

[18] *Id.*

[19] *Id.* at 1045, 1048.

[20] *Id.* at 1046.

[21] *Lisa, S.A. v. Mayorga*, 2009 WL 1846308, at *1 (Del. Ch. June 22, 2009), *aff'd*, 993 A.2d 1042 (Del. 2010). "The Vice Chancellor held that Delaware courts had no personal jurisdiction over any defendants other than the Delaware corporate defendants. The [Court of Chancery] dismissed the defendants over which it lacked jurisdiction, and denied Lisa's request for jurisdictional discovery. As for the Delaware corporate defendants, the Vice Chancellor dismissed Counts III

and held that Lisa had "met [the] heavy burden" of demonstrating "overwhelming hardship and inconvenience."[22]

Lisa appealed the Court of Chancery's: (1) denial of "jurisdictional discovery before dismissing the claims against the [non-Delaware corporate] defendants for lack of personal jurisdiction;" and (2) dismissal of Lisa's fraud and unjust enrichment claims against the Delaware corporate defendants for *forum non conveniens* to this Court.[23]  As to the claims dismissed for *forum non conveniens*, Lisa argued on appeal that the Court of Chancery failed to apply the overwhelming hardship standard and instead "merely balanced the hardship to the defendants from being required to litigate in Delaware against the hardship to Lisa from having to litigate in the defendants' proposed forum—Guatemala."[24]

This Court affirmed the Court of Chancery's *forum non conveniens* dismissal, and rejected Lisa's argument that the Court of Chancery failed to give sufficient weight to the overwhelming hardship overlay of *Cryo-Maid* by determining that: (1) Lisa was not entitled to the benefit of the overwhelming hardship gloss on *Cryo-*

---

and V of the complaint for failure to state a claim upon which relief can be granted, and dismissed the remaining Counts (conspiracy to defraud and unjust enrichment) on *forum non conveniens* grounds."  *Lisa*, *supra* note 3, at 1045–46.

[22] *Lisa, S.A. v. Mayorga*, 2009 WL 1846308, at *8 (Del. Ch. June 22, 2009), *aff'd*, 993 A.2d 1042 (Del. 2010) (internal citation omitted).

[23] *Lisa, supra* note 3, at 1046, 1049.  Lisa did not appeal the dismissal of Counts III and V: the claims against the Delaware corporate defendants dismissed for failure to state a claim.  *Id.* at 1046 n. 8.

[24] *Id.* at 1046.

*Maid*; (2) *McWane* applied; and (3) dismissal in favor of the resolution reached in the prior suits was proper.[25] In affirming, this Court reasoned:

> Lisa's claim [that the Court of Chancery incorrectly applied the overwhelming hardship test] is without merit, because the "overwhelming hardship" standard does not apply to Delaware actions—like this one—that were not "first filed." . . .
>
> The 1998 Florida Action was what propped up this Delaware action. Its dismissal caused that prop to collapse and warranted the dismissal of the Delaware action under *McWane*. That the 1998 Florida Action is no longer pending does not change the outcome, even though language in *McWane* speaks in terms of a "prior action pending in another jurisdiction." To allow Lisa to proceed with this Delaware action after the dismissal with prejudice of the predicate Florida action, would ignore the binding effect of the Florida adjudication, and create the possibility of inconsistent and conflicting rulings. That is precisely the outcome *McWane*'s doctrine of comity seeks to prevent. . . .
>
> We therefore affirm the Court of Chancery's dismissal of Lisa's action, on *forum non conveniens* grounds, under *McWane*.[26]

*Lisa*'s outcome rested on two premises: one case specific and one not. As to the larger premise, *Lisa* appropriately held that Lisa's prior Florida actions left Lisa unable to call on the aid of the overwhelming hardship gloss on *Cryo-Maid*. The more case specific premise is the one moving from that conclusion to applying *McWane*. The rationale for that in *Lisa* was arguably due to the unique nature of the interplay between the 1998 Florida Action and the Delaware action. By Lisa's own admission, the purpose of its Delaware action was to facilitate its recovery in the

---

[25] *Id.* at 1047.
[26] *Id.* at 1047–48.

10

1998 Florida Action.[27]   And, because that suit's dismissal had been affirmed on appeal in Florida, the "prop" under the Delaware action had "collapse[d] and warranted the dismissal of the Delaware action under *McWane*."[28]   This Court also made clear that *McWane* is a form of *forum non conveniens* analysis by stating that, because "dismissal of this entire case was appropriate on *forum non conveniens* grounds," we would not reach the plaintiff's other arguments.[29]

The outcome in *Lisa* made sense, given the proliferation of suits filed by Lisa and its failure in those prior suits.  But, to the extent that *Lisa* purported to create a larger, non-case specific rule, it, in our view, stands solely for the proposition that when a plaintiff has previously brought its claims in another forum, that decision has the effect of denying that plaintiff the ability to call on the overwhelming hardship standard in addressing a *forum non conveniens* motion.  If the prior lawsuit is no longer pending, absent an unusual situation such as *Lisa*'s where the Delaware action was solely brought to facilitate recovery in the prior action, *McWane* falls out of the calculus.  The fact that the prior action was dismissed may, of course, have great

---

[27] "On November 22, 2006, Lisa filed this action in the Court of Chancery.  Lisa claims that after it commenced its 1998 Florida Action, Mayorga and other members of the Gutierrez Mayorga and Bosch Gutierrez families, fraudulently reorganized the Campero Group specifically to eliminate or diminish Lisa's ability to obtain relief in the 1998 Florida Action—namely, to recover damages or be reinstated as a stockholder of the Campero Group.  Lisa claims that the defendants caused the Campero Group to transfer the U.S. rights to the Pollo Campero franchise to Campero USA (through Campero Panama and Campero Delaware) for no consideration, all as part of a continuing scheme and conspiracy to defraud Lisa."  *Id.* at 1045.

[28] *Id.* at 1048.

[29] *Lisa, supra* note 3, at 1048–49.

11

relevance. But that is because principles of preclusion and *stare decisis* might dictate dismissal.

## II.

The fact pattern in this case, where a later-filed Delaware action is challenged by a motion to dismiss for *forum non conveniens* after a first-filed action in Illinois was already dismissed for *forum non conveniens*, is rare. As has been discussed, motions to dismiss for *forum non conveniens* usually arise from either: (1) a first-filed Delaware action with no pending descendants; or (2) a Delaware action with a predecessor pending elsewhere. Like in *Lisa*, the facts in this case do not mirror one of the two usual *forum non conveniens* scenarios. That is why the parties, and the Court of Chancery, naturally looked to *Lisa* for clarification.

Gramercy pressed the position below that it was entitled to the deference given to a first-filed action and that therefore the Court of Chancery should analyze the *Cryo-Maid* factors under the overwhelming hardship standard.[30] In response to this argument—which was the central focus of the parties' briefing—Bulgarian-American and Allied argued that under this Court's decision in *Lisa*, it was entitled

---

[30] *E.g.*, Appellant's Opening Br. 14 ("The lower court erroneously held that one reason for the overwhelming hardship standard is deference to a plaintiff's choice of forum, and that only litigants that make Delaware their first choice are entitled deference. . . . However, Plaintiffs did indeed 'choose' Delaware to resolve their dispute. The fact that they chose Delaware *second* does not render it any less of a choice. Nor does Delaware law support the proposition that a plaintiff's second choice of forum following a purely procedural dismissal in another is entitled to less deference than its original choice.").

to dismissal under *McWane*, and in the alternative, under a straightforward *forum non conveniens* analysis.[31] Neither party gave much thought to a possible intermediate position: that despite *Cryo-Maid*'s overwhelming hardship overlay being inappropriate in this case, *Cryo-Maid* still provided a more appropriate framework for the Court of Chancery's analysis than *McWane*.

The Court of Chancery engaged in a thorough analysis of the competing arguments presented to it. In doing so, it recognized the reality that both *Cryo-Maid* and *McWane* were *forum non conveniens* standards, labeling *McWane* and *Cryo-Maid* as "mirror-image analyses bent on serving the same beneficial interests,"[32] and quoting *Lisa*'s assertion that "the two doctrines of overwhelming hardship and *McWane* . . . operate consistently and in tandem to discourage forum shopping and promote the orderly administration of justice by recognizing the value of confining litigation to one jurisdiction, whenever that is both possible and practical."[33]

---

[31] *E.g.*, Appellee Allied's Answering Br. 16 ("This action is not Plaintiffs' 'first-filed.' Plaintiffs filed this case in Delaware only after their claims were dismissed in Plaintiffs' first forum (Illinois). Therefore, under the plain language of this Court's decision in *Lisa*, the 'strong deference' that Delaware courts afford to a plaintiff's initial choice of forum is not warranted, and the 'overwhelming hardship' standard does not apply.") (internal citations omitted); *Id.* at 36 ("Had the Vice Chancellor conducted a *Cryo-Maid* analysis, it would have demonstrated that Defendants have amply shown that litigating this case in Delaware will cause them 'overwhelming hardship.'") (internal citation omitted).

[32] *Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*, 2016 WL 7494898, at *8 ("[T]he factors that weigh so strongly in favor of a first-filed Delaware plaintiff under *Cryo-Maid*—the respect for a plaintiff's choice of forum, to avoid forum-shopping and inconsistent judicial decisions—cut just as strongly against the Delaware second filer. A *McWane* analysis directs the court to examine whether actions arise from the same facts, and whether the first forum can provide justice; if so, the court may freely exercise its discretion to stay or dismiss.").

[33] *Id.* (quoting *Lisa*, *supra* note 3, at 1047) (internal citation omitted).

The Court of Chancery then evaluated differences of opinion between the parties about the applicability of the overwhelming hardship standard. In rejecting Gramercy's argument, and deciding not only that the overwhelming hardship standard did not apply, but also that *McWane*, rather than *Cryo-Maid*, applied even though Gramercy's Illinois action was no longer pending, the Court of Chancery was heavily influenced by this Court's decision in *Lisa*:

> Under *McWane*, a subsequent Delaware action would have been subject to dismissal in favor of an identical first-filed pending action in Illinois; under *Lisa,* the fact that the pending action has been resolved does not necessarily change this result. The Illinois trial and appellate courts, after discovery and on consideration of the positions of the parties, determined that Bulgaria provides an adequate forum and is the appropriate forum for any litigation. I find, based on the record before me, that dismissal under the *McWane* analysis is appropriate.[34]

With some understandable justification, the Court of Chancery seemed to have viewed *Lisa* as creating a binary choice between *Cryo-Maid* with an overwhelming hardship standard tilted heavily in favor of the plaintiff and *McWane* with a discretionary analysis tilted toward dismissal or a stay. But, we believe that rigid dichotomy is not dictated by prior precedent and risks confusing principles of *forum non conveniens* with principles such as claim preclusion. To that point, although Gramercy's Delaware action was not first-filed, and thus the party moving to dismiss for *forum non conveniens* did not have to show overwhelming hardship

---

[34] *Id.* at *11.

14

to obtain that dismissal, Delaware's *forum non conveniens* standards do not necessarily present a rigid choice between: (1) the *McWane* standard that applies to later-filed actions facing a motion to dismiss for *forum non conveniens*, which are not subject to the overwhelming hardship standard; and (2) the presumption of overwhelming hardship under *Cryo-Maid* applied to first-filed cases. Instead, there is an intermediate option: one that still applies *Cryo-Maid* straightforwardly when a plaintiff has not chosen Delaware first, but gives the trial court the discretion to determine whether Delaware is an appropriate forum after a reasoned assessment of the *Cryo-Maid* factors.

This case does not have the factual particularities that led to this Court's application of *McWane* in *Lisa*. Unlike in *Lisa*, where the prior pending action was dismissed with prejudice, Gramercy's Illinois case was dismissed procedurally. And, also unlike in *Lisa*, Gramercy's Delaware action was not brought specifically to facilitate recovery in a no longer pending predecessor suit that was largely dismissed on the merits. The Delaware action here was instead brought because Gramercy could not get a hearing on its claim in Illinois.

Because Gramercy filed in Illinois first, the *Cryo-Maid* analysis here is not tilted in Gramercy's favor under the overwhelming hardship standard. But *McWane*'s discretionary standard tilted in favor of the defendant also does not apply,

because the first-filed Illinois action was dismissed on *forum non conveniens* grounds and without prejudice.

The Illinois action might, of course, also have had relevance if its rulings gave rise to issue or claim preclusion, or because its consideration of similar issues (including issues related to *forum non conveniens*) was persuasive. But, because the Court of Chancery was not asked to apply principles of preclusion, but instead to consider whether Delaware was an inconvenient forum, the proper question before the Court of Chancery was whether or not the *Cryo-Maid* factors weighed in favor of dismissal.

## III.

Here, though, we need not disturb the thoughtful outcome rendered by the Court of Chancery. Its invocation of *McWane* was not central to its ultimate determination, except in the sense that it did not apply *Cryo-Maid*'s overwhelming hardship overlay to its *forum non conveniens* analysis. In the course of its close analysis of Bulgarian-American and Allied's motion to dismiss, the Court of Chancery considered the relevant *Cryo-Maid* factors, and its decision to dismiss, although focused more on *McWane* than *Cryo-Maid*, substantively involved a thorough and well-reasoned *forum non conveniens* analysis.

Although the Court of Chancery's analysis focused on *McWane*, its decision still relied on facts relevant to the *Cryo-Maid* factors: "I need not reach the question

of whether litigation in Delaware would create an overwhelming hardship for the Defendants . . . [but] the following considerations would inform such an analysis, as they inform my decision here under *McWane* and *Lisa*."[35]

The Court of Chancery recognized facts relating to the *Cryo-Maid* factors in its *forum non conveniens* analysis. It just did so without weighing those factors against *Cryo-Maid*'s overwhelming hardship standard. For example, the Court of Chancery addressed the relative ease of access to proof in noting that "[u]ndoubtedly, trial here would require translation of some documents written via the Cyrillic, not Latin, alphabet."[36] Likewise, the Court of Chancery considered the availability of compulsory process:

> [A]s the Illinois court noted, the record indicates that a number of the witnesses necessary to the Defendants are in Europe, including in Bulgaria, and there would be some burden securing their testimony. Obtaining the live testimony of some witnesses would require overseas travel on their part, and would raise questions of the availability of compulsory attendance.[37]

And the Court of Chancery also addressed whether the controversy here was dependent on the application of Delaware law by highlighting that:

> Plaintiffs' claims in the present action hinge on whether Bulgarian law was violated. I note that Bulgarian regulators, despite having been on notice and responding to Plaintiffs' concerns, did not find such a violation of the Bulgarian POSA existed. The Plaintiffs ask, nonetheless, that I interpret Bulgarian securities law in light of the

---

[35] *Gramercy*, *supra* note 32, at *12.
[36] *Id.*
[37] *Id.*

17

instant fact pattern, a matter which, according to the record, poses certain questions of first judicial impression. They then ask that I apply that law, find that a violation of Bulgaria's mandatory tender offer rule occurred, and that such violation provides a basis for the causes of actions currently pled in Delaware. This presents questions presumably of keen interest to Bulgaria, but not Delaware. At bottom, the relief sought would require that I find the regulators of Bulgaria failed to enforce their law, or applied their law incorrectly. . . .

While it is obvious that the Plaintiffs desire to litigate this matter in an American forum, the fact is that the Plaintiffs bought stock in a Bulgarian company regulated by Bulgarian law, and are trying to vindicate a right under that law. A foreign judge blundering in to vindicate such rights under the circumstances present here seems problematic. A decision by this Court could have serious, unintended consequences on the development of Bulgarian law and on conditions for investment of capital in that country.[38]

We therefore affirm the Court of Chancery's decision that Gramercy's claims, which involve important and unsettled issues of Bulgarian securities law arising out of an investment in a Bulgarian bank, should not proceed in Delaware.

Further, we clarify the spectrum of standards under which motions for *forum non conveniens* are considered in Delaware. When a case is first-filed, Delaware courts award dismissal only when the defendant has established overwhelming hardship, thus tilting the analysis in the plaintiff's favor.[39] When a case is later-filed, and its predecessors remain pending, *McWane*'s "strong preference for the litigation

---

[38] *Id.*

[39] *E.g.*, WOLFE & PITTENGER, *supra* note 5, § 5.02 ("The onerous burden upon a party seeking dismissal on the basis of *forum non conveniens* is justified by the fact that dismissal results in the ultimate defeat of plaintiffs' choice of forum.").

of a dispute in the forum in which the first action relating to such dispute is filed"

applies and the analysis is tilted in favor of the defendant.[40]  But when a case is later-

filed and its predecessors are no longer pending, the analysis is not tilted in favor of

the plaintiff or the defendant.  In that situation, Delaware trial judges exercise their

discretion and award dismissal when the *Cryo-Maid* factors weigh in favor of that

outcome.

---

[40] *Id.* at § 5.01.