**COURT OF CHANCERY OF**
**THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: January 8, 2021
Date Decided: May 27, 2021

Geoffrey G. Grivner, Esquire
Kody M. Sparks, Esquire
Buchanan Ingersoll & Rooney PC
919 North Market Street, Suite 990
Wilmington, Delaware 19801

Kevin A. Guerke, Esquire
Caleb G. Johnson, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, Delaware 19801

Re:  *Thomas Sweeney, et. al., v. RPD Holdings Group, LLC, et. al.*,
Civil Action No. 2020-0813-SG

Dear Counsel:

This matter is before me on the Defendants' Motion to Dismiss on grounds of *forum non conveniens*. For the reasons that follow, that motion is granted.

Fifteenth century Italian financier Lorenzo de Tonti promoted an investment vehicle that was a mix of joint tenancy, life insurance and the lottery. In the tontine, investors paid a sum into the vehicle that was never to be repaid. Instead, once the vehicle was subscribed, the investor received modest annuity payments. The payments for each unit were fixed. Nonetheless, the investment was attractive to investors of a sporting nature, because as each unit-holder died, his right to receive payments went not to his heirs, but was spread among the surviving unit-holders, so that the last alive received cumulative annuities that were large indeed.

1

The tontine, in modern times, is found more in fiction than in real life; the moral hazard incumbent in its rather macabre features make it beloved of mystery writers.[1]  Nonetheless, many ownership schemes contain features of the tontine; the ownership of shares of the entity at issue here, per the complaint, is one such structure.  The following facts, except where noted, are taken from the Amended Complaint; in all events the facts recited represent the parties' allegations only.

The shares in question here represent interests in a family produce company, Dandrea Holdings, Inc. ("the Company"), which operates in the sandy, tomato-friendly environs of Vineland, New Jersey.[2]  The Company equity is composed of 75 shares of stock, with each Dandrea brother, Ronald, Steven, and Frank, beneficially owning 25 shares.[3]  The ownership structure of this three-brother-owned business is byzantine, and not entirely clear from the Complaint and the briefing.  I present it here (to the extent I comprehend it) in simplified form, as sufficient to the issues presented.[4]  The structure is represented graphically in Figure 1.  Each brother's shares were held by a separate Delaware limited liability holding company,

[1] *See, e.g.*, Agatha Christie, 4:50 from Paddington (1957); *see also The Simpsons: The Curse of the Flying Hellfish* (Fox television broadcast Apr. 28, 1996).
[2] The family company was originally Dandrea Produce, Inc.  Am. Compl. ¶ 2.  After a 2015 merger, the assets and operations of that company were divided into two other entities that are both majority-owned by Dandrea Holdings, Inc., a Delaware corporation.  *See id.* ¶ 21.
[3] *Id.* ¶ 2.
[4] And in aid of the understanding and mental well-being of the reader.

which I will refer to here as "Frank's LLC,"[5] "Steven's LLC,"[6] and "Ronald's LLC."[7] Each brother was the sole manager of his respective LLC.[8] Each LLC was in turn "owned" by the Bryn Mawr Trust Co. of Delaware ("Bryn Mawr"), presumably beneficially for each brother.[9] In 2007, the brothers entered a trust agreement (the "TA").[10] Although the Amended Complaint both quotes and attempts to explain the TA, I find its language opaque. The Plaintiffs' theory is that the TA was entered to form a tontine-like structure for the stock ownership. The trust created by the TA (the "2007 Trust") was to maintain life insurance policies in the amount of $2 million (slightly less than the agreed upon value of each brother's shares) on each brother, presumably payable to the 2007 Trust.[11] Upon the death of a brother, his surviving brothers were able to elect to cause the 2007 Trust to use the life insurance proceeds to purchase the shares of the decedent, pro rata.[12] One brother, Ronald,[13] has died, and his survivors have given Sandra, his widow and executrix, notice that they are exercising what amounts to a call right under the TA.

---

[5] Plaintiff FSD Holdings Group, LLC.

[6] Plaintiff SPD Holdings Group, LLC.

[7] Defendant RPD Holdings Group, LLC.

[8] *See* Am. Compl. ¶¶ 23(i)–23(iii); Defs.' Opening Br. 9, Dkt. No. 12.

[9] *See* Figure 1; *see also supra* notes 3 and 5–7 and accompanying text.

[10] *See, e.g.*, Am. Compl., Ex. 2 (the "2007 Trust Agreement"), Dkt. No 10.

[11] Per the Plaintiffs, the premium on each life insurance policy was paid by Dandrea Holdings, Inc., not the 2007 Trust. *See* Am. Compl. ¶ 37.

[12] *See* Am. Compl. ¶¶ 25–29.

[13] Because of a superabundance of Dandreas in this litigation, I refer to Ronald, his widow, and his siblings by their first names only. No disrespect is intended thereby.

As an added twist, the Plaintiffs allege that Ronald, surreptitiously and in violation of the TA, somehow changed the beneficiary of the policy owned by the 2007 Trust to his estate, which has received the $2 million in benefits.[14] Despite the calls of the remaining brothers, the Defendants, Ronald's LLC and Sandra, refuse to turn over the shares. This action was brought by plaintiffs Thomas Sweeney, trustee of the 2007 Trust (the "2007 Trustee"), the surviving brothers, and their respective entities, Frank's and Steven's LLCs, which purportedly made the calls on the estate. The Plaintiffs seek specific performance of the TA by Ronald's LLC and by Sandra as Executrix.

It is worth noting for purposes of the Motion here[15] that the Defendants paint a substantially different view of the facts in their briefing on the Motion and via attachments thereto.[16] According to the Defendants, Ronald and his brothers had a falling out over the brothers' perceived misfeasance in the family business, causing Ronald to sue them.[17] That litigation was withdrawn in 2017 in return for the brothers' promise to buy out Ronald for $5 million, a promise that remains unfulfilled.[18] The amount was fixed by a then-recent valuation by the three brothers

---

[14] *E.g.*, Am. Compl. ¶¶ 38, 40.
[15] Because the Motion is based on comity grounds, I am not limited in my consideration to the allegations of the complaint.
[16] *See generally, e.g.*, Defs.' Opening Br., Dkt. No. 12.
[17] *Id.* 10–11.
[18] *Id.* 11.

of their collective interests, totaling $15 million.[19]  According to Sandra, Ronald never told her about the TA or the existence of the 2007 Trust.[20]  She was surprised, therefore, to receive the surviving brother's calls for Ronald's stock.[21]  When she received these calls, she requested the 2007 Trust's records, but was stonewalled by the trustee.[22]  She therefore filed suit on September 21, 2020 in the Chancery Division of the Superior Court of New Jersey against Sweeney, trustee of the 2007 Trust and a plaintiff here, seeking records and an accounting for the trust, in order to be able to defend against the calls.[23]  This Delaware action was filed the next day, September 22, 2020, seeking specific performance of the TA based on those same calls.[24]

After Ronald's death, Sandra used her authority as executrix and/or successor manager of Ronald's LLC to remove that entity from the ownership of Bryn Mawr and vest it in the The Dandrea Irrevocable Trust (2020), a New Jersey entity (the "2020 Trust").[25]  After the complaint in this action was amended, adding Ronald's LLC as a defendant, Sandra caused that entity to be redomiciled as a New Jersey, rather than a Delaware, limited liability company.[26]  Sandra is also engaged in

---

[19] *See id.* 2.
[20] *Id.* 11–13.
[21] *Id.*
[22] *See id.* 11–13.
[23] *Id.* 13–14.
[24] *Id.*; *see also generally* Am. Compl.
[25] Defs.' Opening Br. 11–12.
[26] *Id.*

litigation concerning the operation of the Dandrea business, involving matters not at issue here, with Frank and Steven, in New Jersey Superior Court.[27] That action was filed by yet another Dandrea entity, Dandrea Produce, LLC.[28]

I have before me the Defendants' Motion to Dismiss the Plaintiffs' Amended Complaint. The Motion asks that the action be dismissed in favor of a related matter in New Jersey state court.[29]

The Defendants contend that this action should be dismissed in favor of what they characterize as a first-filed action in the Chancery Division of the Superior Court of New Jersey, under the deference to such first-filed actions recognized under *McWane Cast Iron Pipe*[30] and its progeny. This is not, to my mind, a case invoking the *McWane* first-filed doctrine, however. The Defendants assert that the New Jersey Chancery Division action (the "NJC Action"), when filed, was not a plenary action and does not involve the issues here;[31] I disagree. The NJC Action was brought to develop whether the 2007 Trust had perfected specific performance rights

[27] *Id.* 10, 14–16.

[28] *See id.* 15–16; *see also generally id.*, Ex. F.

[29] Also pending is Sandra's Motion to Dismiss for lack of personal jurisdiction over her as executrix of Ronald's estate. Because co-Defendant Ronald's LLC was a Delaware entity when served, it is undoubtedly subject to the jurisdiction of this Court, and Sandra's motion is therefore not potentially case dispositive. I accordingly addressed the *forum non conveniens* motion first; my decision here renders Sandra's motion moot. I note, however, that the grounds asserted by the Plaintiffs for personal jurisdiction over Sandra, or Ronald's estate, appear dubious.

[30] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*, 263 A.2d 281 (Del. 1970).

[31] *See* Pls.' Answering Br. 26–28, Dkt. No. 15.

under the TA, the same issue present here. However, this action was filed within a day of the NJC Action. There is no indication that this action is an attempt to frustrate Sandra's choice of forum, which is the ill that *McWane* aims to cure. The actions are, as a practical matter, simultaneous. The *McWane* first-filed doctrine is inapplicable.

I turn to the Defendants' request that I dismiss this matter in favor of the NJC Action, pursuant to a *Cryo-Maid*[32] analysis. In the interest of comity and efficiency, I may exercise discretion to stay or dismiss this matter in favor of litigation in another jurisdiction where justice so requires.[33] The simultaneous nature of the actions leads to an analysis under the traditional *forum non conveniens* rubric.[34]

When applying the forum *non conveniens* doctrine, this Court considers six factors, often denominated the *Cryo-Maid* factors:

> 1) the applicability of Delaware law in the action; 2) the relative ease of access to proof; 3) the availability of compulsory process for witnesses; 4) the pendency or non-pendency of any similar actions in other jurisdictions; 5) the possibility of a need to view the premises; and 6) all other practical considerations which would serve to make the trial easy, expeditious and inexpensive.[35]

---

[32] *General Foods Corp. v. Cryo–Maid, Inc.*, 198 A.2d 681, 684 (Del. Super. 1964), *overruled in part on other grounds sub. nom., Pepsico, Inc. v. Pepsi-Cola Bottling Co.*, 261 A.2d 520 (Del. 1969).

[33] *E.g., In re Citigroup Inc. S'holderr Derivative Litig.*, 964 A.2d 106 (Del Ch. 2009).

[34] *Id.* at 116.

[35] *Id.* at 117 (citation omitted).

7

Because neither action can be considered first-filed, I should apply my discretion to dismiss in favor of the pending foreign action, where the *Cryo-Maid* factors support such an outcome, without applying a presumption in favor of either forum.[36] The Defendants as movants bear the burden to demonstrate that the applicable factors adhere.[37] Here, all factors sound in favor of this matter proceeding in New Jersey in the NJC Action.[38]

Sandra initially brought the NJC Action as Trustee of a New Jersey trust, the 2020 Trust. The 2020 Trust in turn is the holder of Ronald's LLC and thus the shares of stock at issue in this litigation. Ronald's LLC, which directly holds the disputed shares, is now a New Jersey entity—this is relevant only to dispel any concern that the New Jersey courts lack jurisdiction over the entity holding the shares. Sandra has amended the complaint in the NJC Action to seek interpretation and specific performance of the TA with respect to the stock; the very issue the Plaintiffs ask me to address in this action. Specifically, she asserts entitlement under the TA to the $5 million amount purportedly agreed to by the brothers to end Ronald's litigation in 2017, based on a $15 million valuation of the total of the three brothers' interests. The defendants in the NJC Action are Plaintiff-here Sweeney as the 2007 Trustee,

---

[36] *See Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.* 173 A.3d 1033, 1044 (Del. 2017) (addressing Delaware later-filed action where first action is no longer pending); *GPX Capital, LLC v. Argonaut Manufacturing Services, Inc.*, 234 A.3d 1186, 1195 (Del. Super. 2020).
[37] *See, e.g., Gramercy Emerging Markets Fund*, 173 A.3d at 1038.
[38] Save the fifth factor, which is not applicable here.

together with both surviving brothers; I find that complete relief in this matter is available the NJC Action. The Plaintiffs here point out that the NJC Action is not a perfect mirror image of this action, but I find it involves substantially the same parties and issues, which arise from a common nucleus of operative facts.

Both litigations involve construction and enforcement of an agreement, the TA, as it affects ownership of the same shares of stock in the Company. The TA was entered into by three New Jersey residents in New Jersey, creating a New Jersey entity, the 2007 Trust. That trust was settled by, and was for the benefit of, solely New Jersey residents. Its situs is New Jersey, as is the residence of its trustee, Sweeney. The 2007 Trust is, via this action, attempting to achieve specific performance of the TA against the New Jersey estate of a man who was a New Jersey resident. New Jersey trust and contract law will apply, and the TA specifically so provides.[39] The witnesses are all New Jersey residents. The records are all in New Jersey. A court of competent jurisdiction, the Chancery Division of the Superior Court of New Jersey, is vested with the matter, and discovery has commenced. All relevant parties and witnesses are subject to New Jersey jurisdiction.

The only connection to Delaware of this case is the fact that a former Delaware entity, Ronald's LLC, holds the shares that form the *res* in this action. There is no

---

[39] *See, e.g.*, Am. Compl., Ex. 2 Art. XVIII.

9

other connection pled between the Defendants and this forum. This is a New Jersey dog wagging a Delaware tail; it is appropriate that that tail be docked.

While the Plaintiffs point out that the Defendants have failed to demonstrate overwhelming hardship here, it is pertinent that the Plaintiffs' action is not first filed, and considerations of deference to the Plaintiffs' choice of forum are absent here.[40] In light of the simultaneous nature of the pending actions, I may exercise my discretion to dismiss or stay based on what I have determined to be the clear preponderance of the applicable factors, without finding overwhelming hardship.[41] It is obviously inefficient for these issues to proceed on parallel tracks in New Jersey and in Delaware. Every applicable factor weighs in favor of a New Jersey court being the logical and efficient forum. Retaining this matter and applying New Jersey law to this purely New Jersey dispute would, to my mind, be the epitome of lane-hogging. I intend to stay in my lane. Accordingly, this matter is dismissed without prejudice in favor of resolution of the issues by the Chancery Division of the Superior Court of New Jersey.

An appropriate Order is attached.

---

[40] *Lisa, S.A. v. Mayorga*, 993 A. 2d 1042, 1047 (Del. 2010).
[41] *E.g. GPX Capital, LLC v. Argonaut Manufacturing Services, Inc.*, 234 A.3d 1186, 1195 (Del. Super. 2020).

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

cc: All counsel of record (by File & ServeXpress)

**Figure 1. The Dandrea Entities**



**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

THOMAS SWEENEY, as the )
Trustee of the Dandrea Produce )
Insurance Trust, STEVEN DANDREA, )
SPD HOLDINGS GROUP, LLC, )
FRANK DANDREA, and FSD )
HOLDINGS GROUP, LLC, )
)
              Plaintiffs, )
)
    v. ) C.A. No. 2020-0813-SG
)
RPD HOLDINGS GROUP, LLC and )
SANDRA DANDREA, as the Executrix )
of the Estate of Ronald Dandrea, )
)
              Defendants. )

## <u>ORDER</u>

WHEREFORE, the Court having duly considered defendants Sandra Dandrea's and RPD Holdings Group, LLC's Motion to Dismiss the above-captioned action in favor of pending litigation in the Chancery Division of the Superior Court of New Jersey (the "Motion") and for the reasons stated in the accompanying Letter Decision,

IT IS HEREBY ORDERED, this 27th day of May 2021:

1. The Motion to Dismiss is GRANTED;

2. The Plaintiffs' Verified Amended Complaint is dismissed without prejudice.

IT IS SO ORDERED.

/s/ Sam Glasscock III

Vice Chancellor