# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| BCORE TIMBER EC OWNER LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N22C-07-139 PRW CCLD |
| | ) |
| QORVO US, INC., | ) |
| | ) |
| Defendant. | ) |

Submitted: February 10, 2023
Decided: April 18, 2023

## MEMORANDUM OPINION AND ORDER

*Upon Defendant Qorvo US, Inc.'s Motion to Dismiss,*
**GRANTED**.

Max B. Walton, Esquire, Lisa R. Hatfield, Esquire, CONNOLLY GALLAGHER LLP, Newark, Delaware, Andrew W.J. Tarr, Esquire, Brendan P. Biffany, Esquire, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, *Attorneys for Qorvo US, Inc.*

Daniel F. McAllister, Esquire, MCALLISTER FIRM LLC, Wilmington, Delaware, Roger H. Stetson, Esquire, David B. Lurie, Esquire, BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP, Chicago, Illinois, *Attorneys for BCORE Timber EC Owner, LP*.

**WALLACE, J.**

This dispute is about whether a tenant committed waste, breached its lease, and is required to indemnify its landlord for alterations made to a commercial property located in Greensboro, North Carolina. Now before the Court is the tenant/defendant Qorvo US, Inc.'s motion to dismiss landlord/plaintiff BCORE Timber EC Owner LP's amended complaint. That motion invokes Superior Court Civil Rule 12(b)(3) and the doctrine of *forum non conveniens*.

Because Qorvo has shown it would face overwhelming hardship if forced to defend this particular action in Delaware, its motion to dismiss is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE PARTIES

Qorvo is a Delaware corporation that has its principal place of business in North Carolina.[1] Qorvo is the surviving entity by merger between RF Micro Devices, Inc. ("RFMD") and Triquint Semiconductor, Inc. ("TQNT").[2] RFMD was the original tenant for the lease (the "Lease") of 653 Brigham Road, Greensboro, North Carolina 27409 (the "Property").[3]

BCORE is a Delaware limited partnership.[4] It is the surviving entity by merger with BCORE Timber EC Owner, LLC, a Delaware limited liability

---

[1]   Am. Compl. ¶ 9 (D.I. 20).

[2]   *Id.*

[3]   Am. Compl., Ex. A at 1 ("Lease").

[4]   Am. Compl. ¶ 8.

company.[5]   BCORE Timber EC Owner, LLC purchased the Property from Highwoods Realty Limited Partnership ("Highwoods Realty").[6]

## B. FACTUAL BACKGROUND

On October 2, 2007, Highwoods Realty and RFMD entered into the Lease with RFMD agreeing to lease the Property for a 15-year term that terminated on September 30, 2022.[7]   The Property includes a 120,000-square-foot building (the "Building").[8]

In May 2016, RFMD and TQNT merged, and the entity was renamed, Qorvo.[9] So, the Lease was then assigned to Qorvo.[10]   In January 2020, BCORE purchased the Property from Highwoods Realty.   Through that purchase, Highwoods Realty assigned "all its right[s], title, and interest" to BCORE, and BCORE assumed "the obligations of Highwoods Realty under the Lease."[11]

When the Property was first leased, the Building was in "'shell' condition."[12] During the life of the Lease, "substantial alterations" were made to the Building and

---

[5]   *Id.*

[6]   *Id.* ¶ 16; *id.*, Ex. C at 1 ("Assignment and Assumption of Lease").

[7]   Lease §§ 1-2; *see* Am. Compl. ¶¶ 1, 6.

[8]   Am. Compl. ¶ 12; Lease § 1.

[9]   Am. Compl. ¶ 14; *id.*, Ex. B at 1 ("Notice of Assignment of Lease").

[10]   Am. Compl. ¶ 15.

[11]   *Id.* ¶ 16.

[12]   *Id.* ¶ 20 (citing Lease §§ 12, 55).

the Property.[13]

The Lease provided that, subject to certain restrictions, tenants could make alterations to the Property.[14]   But also in the Lease was this provision:   "At Landlord's option, Landlord may require that Tenant remove any or all alterations or improvements at Tenant's expense upon termination of the Lease."[15]

Thus, according to BCORE, when Qorvo refused to remove alterations and remedy certain allegedly serious safety hazards, Qorvo violated both the Lease and North Carolina law.[16]

## C. PROCEDURAL BACKGROUND

BCORE penned three claims in its amended complaint: waste (Count I), breach of contract (Count II), and a declaration that Qorvo breached the lease and is obligated to indemnify BCORE (Count III).[17]

Qorvo—invoking this Court's Civil Rule 12(b)(3) and the doctrine of *forum non conveniens*—has moved to dismiss that complaint for improper venue, arguing "[t]he subject matter of BCORE's claims has no connection to Delaware."[18]   The

---

[13]   *Id.* ¶ 21.

[14]   *Id.* ¶ 27 ("the Building Rules & Regulations . . . . provide various restrictions on [Qorvo's] use of the Property and any Alterations it may wish to make" (citing Lease, Ex. B § 2)).

[15]   *Id.* ¶ 28 (emphasis and alteration in original) (quoting Lease § 13).

[16]   *Id.* ¶¶ 31-53.

[17]   *Id.* ¶¶ 54-70.

[18]   Def.'s Mot. to Dismiss at 1-2 (D.I. 23).

parties briefed the motion, the Court heard argument, and it is now ripe for decision.

## II. STANDARD OF REVIEW

"A motion raising *forum non conveniens* is a request that a court possessing both personal and subject matter jurisdiction over an action nevertheless decline to hear it."[19] A motion to dismiss relying on the doctrine of *forum non conveniens* is granted only in the rare case where undue, overwhelming hardship and inconvenience truly is visited on the protesting defendant hailed here.[20] Indeed, Delaware courts are "hesitant to grant [relief] based on *forum non conveniens*, and the doctrine is not a vehicle by which the Court should determine [merely] which forum would be most convenient for the parties."[21] Whether to grant relief via *forum non conveniens* is left to the trial court's discretion.[22] And when deciding a motion to dismiss invoking *forum non conveniens*, the Court applies the well-worn *Cryo-Maid* factors.[23] Those are:

> (1) the relative ease of access to proof; (2) the availability of

---

[19] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 234 A.3d 1186, 1193 (Del. 2020) ("*GXP Cap. I*"), *aff'd*, 253 A.3d 93, 97 (Del. 2021) (citing *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship.*, 669 A.2d 104, 106 (Del. 1995)).

[20] *Candlewood Timber Gp., LLC v. Pan. Am. Energy, LLC*, 859 A.2d 989, 998 (Del. 2004); *Mar-Land Indus. Contractors, Inc. v. Caribbean Petro. Ref., L.P.*, 777 A.2d 774, 778 (Del. 2001).

[21] *In re Citigroup, Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 117 (Del. Ch. 2009) (citing *Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1199 (Del. 1997)); *see Taylor*, 689 A.2d at 1199 ("An action may not be dismissed upon bare allegations of inconvenience without a particularized showing of the hardships relied upon.").

[22] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 253 A.3d 93, 97 (Del. 2021) ("*GXP Cap. II*").

[23] *Gramercy Emerging Mkts. Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1036-37 (Del. 2017) (citing *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. Ch. 1964)).

compulsory process for witnesses; (3) the possibility of the view of the premises, if appropriate; (4) all other practical problems that would make the trial of the case easy, expeditious and inexpensive; (5) whether or not the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction; and (6) the pendency or nonpendency of a similar action in another jurisdiction.[24]

When the Delaware action is the only-filed the Court applies the overwhelming hardship standard.[25] That is, the Court "must focus on whether the defendant has demonstrated with particularity, . . . that litigating in Delaware would result in an overwhelming hardship."[26]

### III. PARTIES' CONTENTIONS

Qorvo insists that if it is required to litigate this action in Delaware, it will suffer overwhelming hardship.[27] To Qorvo, this action is simply a property dispute where the property and parties are all located in North Carolina and the law to be applied is North Carolina law—the fact that the parties are Delaware businesses shouldn't make a blind bit of difference.[28]

BCORE says litigating in Delaware will not be an overwhelming hardship because while the property and most of the witnesses are located in North Carolina

---

[24]  *Id.* at 1036-37 (cleaned up).

[25]  *Id.* at 1037 (citation omitted).

[26]  *Mar-Land Indus. Contractors, Inc.*, 777 A.2d at 779.

[27]  *See* Def.'s Mot. to Dismiss at 11.

[28]  *Id.* at 11-24.

this is fundamentally a breach-of-contract action and any difficulty in accessing evidence is fully and effectively solved by technology.[29]

## IV. DISCUSSION

The Delaware action is the only action filed in this dispute; so the Court here applies the overwhelming hardship standard to determine whether dismissal is warranted.[30] This standard "is not intended to be preclusive," but "is intended as a stringent standard that holds defendants who seek to deprive a plaintiff of [its] chosen forum to an appropriately high burden."[31] Accordingly, the Court must determine whether Qorvo "ha[s] shown that the *forum non conveniens* factors weigh so overwhelmingly in [its] favor that dismissal of the Delaware litigation is required to avoid undue hardship and inconvenience to [it]."[32] As now explained, Qorvo has done so here.

### A. THE RELATIVE EASE OF ACCESS TO PROOF

The first *forum non* factor is "the relative ease of access to proof."[33] Qorvo suggests this factor weighs in its favor because "*all of the material witnesses to this*

---

[29] *See* Pl.'s Answering Br. at 7-23 (D.I. 25).

[30] *See generally GXP Cap. I*, 234 A.3d at 1194 ("When the Delaware case is the first action filed, relief via *forum non conveniens* is available only in the face of 'overwhelming hardship' from Delaware litigation." (citation omitted)).

[31] *Martinez v. E.I. DuPont de Nemours & Co., Inc.*, 86 A.3d 1102, 1105 (Del. 2014) ("*Martinez II*") (citations omitted).

[32] *Id.* at 1106.

[33] *Id.* at 1104 (citing *Cryo-Maid*, 198 A.2d at 684).

*lawsuit live in North Carolina*, none of the documentary evidence on which either party will rely is located in Delaware, and the substantial majority of that evidence is located in North Carolina."[34] Qorvo identified eight key third-party witnesses who have "information relating to one or more of three key factual issues" and explains what knowledge each witness holds.[35] Moreover, Qorvo says, there is no relevant evidence located in Delaware.[36]

> BCORE counters:
>
> Qorvo fails even to offer the sworn protestations of hardship found to be insufficient in *MarLand* and *Candlewood*, does not identify any specific proof that it will have difficulty offering (other than the third-party compulsory process issue . . .), and does not claim that domestic travel from North Carolina to Delaware will unduly burden its employees or counsel.[37]

According to BCORE, even if every last witness—third-party or other—is located in North Carolina, "modern methods of transportation lessen the Court's concern about the travel of witnesses who do not live in Delaware."[38]

Qorvo must "make a particularized showing that witnesses, documents, or

---

[34] Def.'s Reply Br. at 7 (emphasis in original) (D.I. 27); *see also* Def.'s Mot. to Dismiss at 16 n.5 ("Although the physical location of documentary evidence outside a court's jurisdiction does not necessarily create undue hardship in modern litigation, it is noteworthy that the significant majority of the documentary evidence relating to the Lease and the Property is located in North Carolina.").

[35] Def.'s Mot. to Dismiss at 12-13.

[36] *Id.* at 16 n.5; Def.'s Reply Br. at 7.

[37] Pl.'s Answering Br. at 13.

[38] *Id.* at 8 (quoting *In re CVS Opioid Ins. Litig.*, 2022 WL 3330427, at *7 (Del. Super. Ct. Aug. 12, 2022)).

other evidence necessary to defend the allegations contained in [BCORE]'s complaint cannot be brought to or otherwise produced in Delaware."[39]  Under the specifics of this case, it did that.  Qorvo identified individual key witnesses (and the information they would testify to) that are not in Delaware.[40]  And no documentary evidence is located in Delaware.[41]

Because none of the known material witnesses, documents, or other relevant proof are located in Delaware, this factor weighs in favor of dismissal.[42]

## B. THE AVAILABILITY OF COMPULSORY PROCESS FOR WITNESSES

The second consideration is tied closely to the first *Cryo-Maid* factor.[43]  Here, the Court must evaluate whether "another forum would provide a substantial improvement as to the number of witnesses who would be subject to compulsory process."[44]  While in some circumstances important, this factor is not dispositive.[45]

Qorvo claims it will suffer overwhelming hardship if forced to litigate in

---

[39]  *Mar-Land*, 777 A.2d at 781.

[40]  Def.'s Mot. to Dismiss at 16.

[41]  *Id.* at 16 n.5; *see also* Pl.'s Answering Br. at 13.

[42]  *See Pipal Tech Ventures Private Ltd. v. MoEngage, Inc.*, 2015 WL 9257869, at *6 (Del. Ch. Dec. 17, 2015) (finding factor favored dismissal because while "[i]t is true that modern technology has lessened the degree of efficiency gained by proximity, . . . to the extent documentary and deposition evidence must be gathered, that process will largely take place in India, and certainly not in Delaware.").

[43]  *Barrera v. Monsanto Co.*, 2016 WL 4938876, at *6 (Del. Super. Ct. Sept. 13, 2016).

[44]  *Mt. Hawley Ins. Co. v. Jenny Craig, Inc.*, 668 A.2d 763, 769 (Del. Super. Ct. 1995) (citation omitted).

[45]  *Focus Fin. P'rs, LLC v. Holsopple*, 250 A.3d 939, 974 (Del. Ch. 2020).

-8-

Delaware because this Court lacks compulsory process over the witnesses, but "if this lawsuit proceeded in North Carolina, a North Carolina court could compel each of eight [identified key] witnesses to appear and testify."[46] Those witnesses are needed to testify about: "(a) the terms and negotiation of the Lease"; "(b) the Property and its condition"; and "(c) if any breach of the Lease occurred, whether it was material or immaterial."[47] And, says Qorvo, "[i]f extrinsic evidence is necessary to support Qorvo's reading of the Lease . . . the original parties who negotiated the Lease will be key witnesses."[48]

BCORE insists that Qorvo has not carried its burden of showing witnesses couldn't testify in Delaware.[49] According to BCORE, certain witnesses have either stated their willingness to travel to Delaware or could be expected to travel here.[50] For those witnesses who can't or won't travel, BCORE says their deposition testimony would be sufficient.[51]

Here, unlike *Candlewood Timber Group, LLC v. Pan America Energy, LLC*

---

[46] Def.'s Mot. to Dismiss at 12-15.

[47] *Id.* at 13-14 (citations omitted).

[48] *Id.* at 6 (explaining a majority of the witnesses will be third-party witnesses (citation omitted)); *id.* at 7 ("Because they are well-acquainted with the Building and Qorvo's work on it, the testimony of these witnesses will be crucial to the factual issues surrounding the condition of the Property at its surrender, and whether the state in which Qorvo returned the Property to BCORE constitutes waste under North Carolina law.").

[49] Pl.'s Answering Br. at 15.

[50] *Id.*

[51] *Id.*

where the defendant failed to make a particularized showing of hardship,[52] Qorvo has shown with particularity that all identified key third-party witnesses are in North Carolina.[53] Given their location, North Carolina can compel more witnesses than Delaware. And given the specifics set forth by it, the location of these witnesses does "impose[] a heavy burden upon [Qorvo] to mount its defense through their cooperation and testimony."[54] Accordingly, this Court's lack of compulsory process contributes to Qorvo's hardship and weighs in favor of dismissal.

## C. THE POSSIBILITY OF A VIEW OF THE PREMISES

The third factor is a possibility of a view of the premises.[55] The relevant premises in this matter is a property located in Greensboro, North Carolina. Most often, this factor holds "little to no weight"[56] "[e]ven in a case where there was a relevant 'premises' that the fact-finder might want to 'view.'"[57]

Qorvo says this factor weighs in its favor because "[a]lthough [it] is rarely

---

[52] 859 A.2d at 995-1001.

[53] Qorvo identified eight key third-party witnesses by name and position and identified what information the witnesses would testify to. Def.'s Mot. to Dismiss at 12-13. This is a significantly greater showing than was made in *Candlewood Timber Gp., LLC*. *Martinez v. E.I. DuPont de Nemours & Co.*, 82 A.3d 1, 32 (Del. Super. Ct. 2012) ("*Martinez I*") ("Unlike the situation in *Candlewood Timber Gp., LLC v. Pan American Energy, LLC*, where the defendant failed to make any particularized showing of hardship, DuPont has identified by name and position at least eight individuals likely to be necessary witnesses." (internal citation omitted)), *aff'd*, 86 A.3d 1102 (Del. 2014).

[54] *Martinez I*, 82 A.2d at 32.

[55] *Gramercy Emerging Mkts. Fund*, 173 A.3d at 1036-37 (citing *Cryo-Maid*, 198 A.2d at 684).

[56] *Hall v. Maritek Corp.*, 170 A.3d 149, 162 (Del. Super. Ct. 2017) (citation omitted).

[57] *Hamilton P'rs, L.P. v. England*, 11 A.3d 1180, 1212 n.17 (Del. Ch. 2010) (citation omitted).

relevant, Delaware courts have recognized the hardship a defendant suffers when the qualities of specific real property bear on a dispute and the fact-finder cannot feasibly view that property."[58] Qorvo cites to *Hupan v. Alliance One International, Inc.* for that proposition—there, this Court found "that a view of the premises [was] potentially more valuable . . . , since the physical characteristics of the farms at issue may have a legitimate bearing on the allegations in the complaint."[59] Additionally, this Court held "if forced to litigate in Delaware, the inability to view the premises or obtain information about other possible sources of [airborne herbicide or pesticide] exposure represent[ed] a hardship."[60] Qorvo argues, like *Hupan*, "the physical characteristics of the Property are central to the parties' dispute."[61]

No doubt, this action's primary claims are grounded both on certain property and contractual rights.[62]

BCORE alleges, in its amended complaint, that Qorvo "materially breached its obligations under its lease with [BCORE] and has committed active and

---

[58] Def.'s Mot. to Dismiss at 17 (citing *Hupan v. All. One Int'l, Inc.*, 2015 WL 7776659, at *6 (Del. Super. Ct. Nov. 30, 2015) and *IM2 Merch. & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at *10 (Del. Ch. Nov. 2, 2000)).

[59] *Hupan*, 2015 WL 7776659, at *6 ("The contention that airborne herbicides and/or other pesticides caused birth defects on neighboring farms because of their proximity to one another may require proof of how the farms are situated in relation to nearby sources of water, ventilation, and pollution.").

[60] *Id.*

[61] Def.'s Mot. to Dismiss at 18.

[62] Am. Compl. ¶¶ 54-65; *see also id.* ¶¶ 66-70 (the third claim in the amended complaint is for a declaratory judgment).

permissive waste under North Carolina law."[63]  In turn, Qorvo rightly counters that the Property's physical characteristics are central to this dispute and that "BCORE directly placed the condition of the Building and the quality of Qorvo's modifications and additions at issue."[64]  And, Qorvo says, "[p]ictures or video may not adequately capture the Building in a way that will allow the fact-finder to comprehend the various parts of the Building and juxtapose BCORE's allegations about the condition of each of those parts against reality."[65]

To be sure, given BCORE's factual allegations, an in-person view of the entire Property and Building may be essential in, at the very least, evaluating its waste claim.  Some support for this is found in *Cryo-Maid* itself.[66]  There, the Court of Chancery, in deciding a declaratory judgment action as to certain contractual rights and obligations, found it beneficial for the court to examine the equipment warehoused in Chicago and subsequently stayed the Delaware action under *forum non conveniens*.[67]  Here, the Court finds it important to physically view the Property and Building central to this dispute.  So, this factor favors dismissal.

---

[63]  *Id.* ¶ 7.

[64]  Def.'s Mot. to Dismiss at 18 (citing Am. Compl. ¶¶ 7, 32, 46-53).

[65]  *Id.* (explaining that "[t]he Building is approximately 120,000 square feet . . . and contains multiple levels, which further increases its size" (citations omitted)).

[66]  194 A.2d 43, 45 (Del. Ch. 1963), *aff'd*, 198 A.2d 681 (Del. 1964), *overruled in part on other grounds*, *Pepsico, Inc. v. Pepsi-Cola Bottling Co.*, 261 A.2d 520 (Del. 1969).

[67]  *Id.* at 43-45.

## D. THE APPLICABILITY OF DELAWARE LAW

The fourth factor centers on "whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction."[68] In *Martinez v. E.I. DuPont de Nemours and Co., Inc.*, the Delaware Supreme Court explained:

> If, as our jurisprudence holds, significant weight should be accorded the neutral principle that important and novel issues of Delaware law are best decided by Delaware courts, then it logically follows that our courts must acknowledge that important and novel issues of other sovereigns are best determined by their courts where practicable.[69]

The parties agree that North Carolina law governs the Lease due to its choice-of-law provision.[70] Unsurprisingly, Qorvo insists this factor favors dismissal because North Carolina law governs this dispute,[71] while BCORE contends the "'application of foreign law is not [a] sufficient reason to warrant dismissal under the doctrine of *forum non conveniens*' absent some particularized showing of overwhelming hardship in the case at issue."[72]

In Qorvo's eyes, BCORE's waste claim raises unsettled issues of North

---

[68] *Martinez II*, 86 A.3d at 1104, 1109 (citing *Cryo-Maid*, 198 A.2d at 684).

[69] *Id.* at 1109-10 (internal citations omitted).

[70] Def.'s Mot. to Dismiss at 19 (citation omitted); Pl.'s Answering Br. at 18-19.

[71] Def.'s Mot. to Dismiss at 19.

[72] Pl.'s Answering Br. at 18 (alteration added) (quoting *Berger v. Intelident Solutions, Inc.*, 906 A.2d 134, 137 (Del. 2006)).

Carolina law.[73] According to Qorvo, in the few North Carolina cases addressing waste, the courts "struggle" to define the scope of a waste cause of action and there is no North Carolina caselaw deciding "whether a commercial lessee's non-permanent modifications constitute waste."[74] Too, Qorvo says it "has a strong interest in North Carolina's courts providing an authoritative ruling on whether BCORE's attempt to use North Carolina's cause of action for waste in this context is proper."[75] And last, Qorvo argues "North Carolina law requires that an action alleging injury to real property be tried in the county in which the real property is located."[76]

BCORE responds that "[t]he North Carolina waste statute is hardly unique or unusual."[77] BCORE says that, despite Qorvo's contrary arguments, it has to acknowledge North Carolina's waste statute was addressed in at least nineteen cases.[78] Thus, BCORE concludes: "the cause of action for waste has existed in North

---

[73] Def.'s Mot. to Dismiss at 20.

[74] *Id.* & n.6 (citations omitted).

[75] *Id.* at 20.

[76] *Id.* at 21 (citation omitted).

[77] Pl.'s Answering Br. at 19 (citing DEL. CODE ANN. tit. 25, § 901 *et seq.*); *but see* Def.'s Reply Br. at 13 ("[A] Westlaw search suggests [Delaware's waste statute] has been cited by only five cases, none of which involved factual circumstances similar to those in BCORE's complaint.").

[78] Pl.'s Answering Br. at 19; *but see* Def.'s Reply Br. at 12 (explaining that most of the nineteen cases which cite to North Carolina's waste statute are over 100 years old and that many of those cases are contradicting as to the scope of the waste cause of action).

Carolina and elsewhere for hundreds of years."[79]

While it is rarely a weighty factor toward overwhelming hardship that the Court must apply a sister state's law, here it is of some moment since: North Carolina law governs the Lease due to its choice-of-law clause; unsettled issues of North Carolina law are raised by the waste claim; and North Carolina law requires lawsuits relating to real property to proceed in the property's locale.[80] That said, this Court is fully equipped to (and frequently does) interpret and apply foreign law. Without more, this factor adds little weight to the dismissal side.[81]

## E. THE PENDENCY OR NONPENDENCY OF A SIMILAR ACTION OR ACTIONS IN ANOTHER JURISDICTION

The parties agree there are no similar pending actions in any other jurisdiction.[82] "The absence of another pending litigation weighs significantly against granting a *forum non conveniens* motion."[83] This factor, while not dispositive, is significant and is only overcome "in the most compelling circumstances."[84] Without another suit pending in another jurisdiction, BCORE

---

[79] Pl.'s Answering Br. at 20 (citation omitted).

[80] Def.'s Mot. to Dismiss at 21.

[81] *See Berger*, 906 A.2d at 137 (finding application of foreign law alone insufficient to dismiss an action under *forum non conveniens*).

[82] Def.'s Mot. to Dismiss at 11 n.3; Pl.'s Answering Br. at 7.

[83] *Berger*, 906 A.2d at 137 (citing cases).

[84] *Id.*

would essentially be forced "to start anew" if a dismissal were granted.[85]

So this factor weighs against dismissal.

## F. OTHER PRACTICAL CONSIDERATIONS.

The final factor examines "all other practical problems that would make the trial of the case easy, expeditious and inexpensive."[86]  Qorvo repeats that "all the relevant party and third-party witnesses live outside this Court's jurisdiction," and maintains that requiring those witnesses to travel to Delaware "does not promote an easy, expeditious, and inexpensive trial."[87]  Qorvo suggests neither party has "any particular interest in this Court resolving the parties' dispute."[88]

According to Qorvo, Delaware's minimal interest in this litigation favors dismissal because "[a]ll of the conduct at issue . . . occurred outside Delaware and involves actors connected to the State only by virtue of their corporate registration."[89]  Even more, says Qorvo, "Delaware has little interest in overseeing

---

[85]  *Parvin v. Kaufmann*, 236 A.2d 425, 427 (Del. 1967).

[86]  *Martinez II*, 86 A.2d at 1104 (citing *Taylor*, 689 A.2d at 1198-99).

[87]  Def.'s Mot. to Dismiss at 21-22 (noting "the majority of material witnesses live within a short distance of the Guilford County, North Carolina courthouse," which is located only fourteen miles from the Property).

[88]  *Id.* at 22 (explaining the parties do not reside in Delaware, the alleged injuries did not occur in Delaware, and Delaware law does not govern the parties' claims).

[89]  *Id.* at 23; *see Martinez II*, 86 A.3d at 1111 ("[W]here . . . the plaintiff in the case is a citizen of a foreign state whose law is at issue, and where . . . the injury in the case occurred in that foreign state, and the case turns on unsettled issues of foreign law, a trial court may permissibly exercise its discretion under *Cryo–Maid* to weigh appropriately the defendant's interest in obtaining an authoritative ruling from the relevant foreign courts on the legal issue on which its liability hinges, as distinguished from a predictive, non authoritative ruling by our courts.").

-16-

the conduct at issue here (which does not relate to substantive corporate governance matters) or regulating the condition of a building located more than 400 miles away in North Carolina."[90]  By contrast, Qorvo concludes, North Carolina holds a strong interest "in deciding and defining the parameters of the cause of action of waste in connection with a commercial lease given [its] currently unsettled nature . . . ."[91]

In defense, BCORE points out that Qorvo has litigated two other actions in Delaware—one it brought as the plaintiff.[92]

In *GXP Capital I*, this Court observed:

> Delaware has an interest in regulating the conduct of entities formed under its laws [*i.e.*, Qorvo], and this public interest can weigh against granting *forum non conveniens* relief.  But Delaware's public interest in providing a forum on the basis of incorporation is strongest in cases where issues of substantive corporate governance and structure are implicated.  And this general—but important—interest in providing a forum for resolving disputes involving its corporate citizens can be outweighed by the hardship occasioned from the other factors visited on those who appear to have been brought here for vexatious, harassing, or oppressive purposes.[93]

The only salient connection between this action and Delaware is the named entities' incorporation or registration.[94]  Of course that alone can't support any finding of

---

[90]  Def.'s Mot. to Dismiss at 23 (citing *GXP Cap. II*, 253 A.3d at 105).

[91]  *Id.*

[92]  Pl.'s Answering Br. at 22-23.

[93]  234 A.3d at 1198.

[94]  Am. Compl. ¶¶ 8-9.

overwhelming hardship.[95] But when considered alongside the totality of the other pertinent factors it too tends toward dismissal.

The particulars of this dispute center around a property located hundreds of miles away North Carolina, where most, if not all, relevant witnesses reside nearby. Its resolution is tied to the specific physical condition of a property that is best observed firsthand. And it requires the application of North Carolina law. While each of these circumstances is addressed elsewhere above, it is of note that none serve to make the litigation of this matter easy, expeditious and inexpensive.

## V. CONCLUSION

To prevail on its dismissal motion, Qorvo "must meet the high burden of showing that the traditional *forum non conveniens* factors weigh so heavily that [Qorvo] will face 'overwhelming hardship' if th[is] lawsuit proceeds in Delaware."[96] After considering the weight of each factor and their effect in total, the Court finds this is one of those rare cases where the Defendant has carried that heavy burden. Accordingly, Qorvo's motion to dismiss the amended complaint on the ground of *forum non conveniens* is **GRANTED**.

**IT IS SO ORDERED.**

**Paul R. Wallace, Judge**

---

[95] *Royal Indem. Co. v. Gen. Motors Corp.*, 2005 WL 1952933, at *11 (Del. Super. Ct. July 26, 2005).

[96] *Martinez II*, 86 A.2d at 1104 (citation omitted).

-18-