# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ZURICH AMERICAN INSURANCE
COMPANY, on its own behalf and as
successor-in-interest to ZURICH
INSURANCE COMPANY, U.S.
BRANCH; AMERICAN
GUARANTEE AND LIABILTY
INSURANCE COMPANY;
AMERICAN ZURICH INSURANCE
COMPANY, and STEADFAST
INSURANCE COMPANY,

        Plaintiffs,

        v.

STERIGENICS U.S., LLC; SOTERA
HEALTH LLC; NATIONAL UNION
FIRE INSURANCE COMPANY OF
PITTSBURGH, PA; SENTRY
INSURANCE COMPANY; FIRST
STATE INSURANCE COMPANY;
NEW ENGLAND REINSURANCE
CORPORATION; FEDERAL
INSURANCE COMPANY; CHUBB
CUSTOM INSURANCE COMPANY;
COLUMBIA CASUALTY
COMPANY; LEXINGTON
INSURANCE COMPANY; THE
INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA;
OAKWOOD INSURANCE
COMPANY, as successor by merger to
CENTRAL NATIONAL INSURANCE
COMPANY OF OMAHA; XYZ
INSURANCE COMPANIES 1-50; and
GRIFFITHS FOODS
INTERNATIONAL INC.,

        Defendants.

) 
) 
) C.A. No. N23C-02-232 MAA CCLD
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
)

Submitted: October 24, 2023
Decided: January 26, 2024

*Upon Sterigenics U.S., LLC, Sotera Health LLC, Chubb Custom Insurance Company, Federal Insurance Company, Oakwood Insurance Company, Central National Insurance Company, and Griffith Foods International Inc.'s Motions to Dismiss or Stay:*

**GRANTED in part and DENIED in part.**

**<u>MEMORANDUM OPINION</u>**

Bruce W. McCullough, Esquire, of BODELL BOVÉ, LLC, Wilmington, Delaware, and Louis A. Bové, Esquire (Argued), of BODELL BOVÉ, LLC, Philadelphia, Pennsylvania, Attorneys for Plaintiffs Zurich American Insurance Company, American Guarantee and Liability Insurance Company, American Zurich Insurance Company, and Steadfast Insurance Company.

David J. Baldwin, Esquire (Argued), and Peter C. McGivney, Esquire, of BERGER HARRIS LLP, Wilmington Delaware, Attorneys for Defendants Sterigenics U.S., LLC and Sotera Health LLC.

Stamatios Stamoulis, Esquire, of STAMOULIS & WEINBLATT LLC, Wilmington, Delaware, and Kevin R. O'Neill, Esquire (Argued), of WALKER WILCOX MATOUSEK LLP, Chicago, Illinois, Attorneys for Defendants Chubb Custom Insurance Company, Federal Insurance Company, Oakwood Insurance Company, and Central National Insurance Company.

Jennifer C. Wasson, Esquire, and Carla M. Jones, Esquire, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, and James Davis, Esquire (Argued), of PERKINS COIE LLP, Seattle, Washington, and Bradley Dlatt, Esquire, of PERKINS COIE LLP, Chicago, Illinois, Attorneys for Defendant Griffith Foods International Inc.

**Adams, J.**

## INTRODUCTION

Plaintiffs Zurich American Insurance Company ("ZAIC"), on its own behalf and as successor-in-interest to Zurich Insurance Company, U.S. Branch ("ZIC"), along with American Guarantee and Liability Insurance Company ("AGLIC"), American Zurich Insurance Company ("AZIC" and, together with ZAIC, ZIC, and AGLIC, "Zurich"), and Steadfast Insurance Company ("Steadfast" and, together with Zurich, "Plaintiffs") filed this action to resolve coverage issues stemming from hundreds of underlying lawsuits relating to the release of ethylene oxide ("EtO") from sterilization plants in Illinois.

Defendants Sterigenics U.S., LLC ("Sterigenics"), Sotera Health LLC ("Sotera"), Chubb Custom Insurance Company ("Chubb"), Federal Insurance Company ("Federal"), Oakwood Insurance Company ("Oakwood"), Central National Insurance Company of Omaha ("Central"), and Griffith Foods International Inc. ("Griffith" and together with Sterigenics, Sotera, Chubb, Federal, Oakwood, and Central, "Defendants") have each moved to dismiss or stay this action in favor of litigation in Illinois. This is the Court's decision on those motions. For the reasons stated herein, Defendants' motions are GRANTED in part and DENIED in part.

1

**FACTS[1]**

This action is the byproduct of numerous lawsuits brought against Griffith, Sterigenics, and Sotera (the "EtO Litigation").[2] The many plaintiffs in those lawsuits allege that EtO emissions from sterilization plants in Willowbrook, Illinois caused them injuries.[3] The proper allocation of the costs from those lawsuits is now the focus of this, and other, litigation.

## I. The Underlying EtO Lawsuits

### A. The Operation of the Sterilization Plants

In 1984, Griffith began operating sterilization facilities in Willowbrook, Illinois through an unincorporated division called Micro-Biotrol.[4] A succession of Griffith-owned entities continued to operate the plants until 1999.[5] In 1999, Griffith sold the equity of its then-operative subsidiary, Griffith Micro Science International, Inc., to Ion Beam Applications, S.A., a Belgian company.[6] Sterigenics, which was formerly Ion Beam Applications, Inc., is now wholly owned by Sotera.[7] Sotera and Sterigenics operated the Willowbrook sterilization plants after Griffith.[8]

---

[1] Unless otherwise noted, the facts are drawn from the Amended Complaint.
[2] Am. Compl. ¶ 1 (D.I. 80).
[3] *Id.*
[4] *Id.* ¶ 52.
[5] *Id.* ¶¶ 53–54.
[6] *Id.* ¶¶ 54, 88.
[7] *Id.* ¶¶ 15, 93.
[8] *Id.* ¶¶ 61–62.

EtO is a toxic carcinogen that was emitted from the Willowbrook sterilization plants.[9]  In addition to increasing the risk of cancer, it can cause a variety of serious ailments and diseases.[10]  The plaintiffs in the EtO Litigation allege that Griffith, Sterigenics, and Sotera lied about the level of EtO emissions from the Willowbrook plants.[11]  They claim the true amount of EtO emissions was dangerous, and that Griffith, Sterigenics, and Sotera ignored scientific and governmental guidance while operating the plants.[12]  In 2019, the Illinois Environmental Protection Agency ordered Sterigenics to cease operation of the Willowbrook plants until it could rein in the EtO emissions.[13]  Sterigenics and Sotera never reopened the facilities.[14]

## B.  The Ensuing Litigation

Following a 2018 report by a federal agency that outlined the risks posed by the Willowbrook sterilization plants, lawsuits began flooding in.[15]  Specifically, more than 800 lawsuits naming over 1,000 plaintiffs have been filed in Illinois state court against Sterigenics, Sotera, and Griffith.[16]  Many, but not all, were consolidated into a single action for discovery and pretrial purposes.[17]  In September 2022, one of

---

[9] *Id.* ¶ 39.
[10] *Id.* ¶ 47.
[11] *Id.* ¶¶ 56, 63.
[12] *Id.* ¶¶ 57, 63
[13] *Id.* ¶ 64.
[14] *Id.* ¶ 65.
[15] *Id.* ¶¶ 40–41.
[16] *Id.* ¶¶ 40–41, 43–44.
[17] *Id.* ¶¶ 42, 46.

the first EtO trials resulted in a finding against Sterigenics, Sotera, and Griffiths.[18] The jury in that case awarded more than $350 million in compensatory and punitive damages, and found Sterigenics 65% liable, Sotera 30% liable, and Griffith 5% liable.[19]

Thereafter, Sotera settled many of the pending EtO lawsuits for $408 million, and Griffith settled many of the lawsuits against it for $48 million.[20]  By September 2022, Sterigenics had reportedly incurred more than $75 million in defense costs, and Griffith had reportedly incurred more than $16 million in defense costs.[21]

## II.    The Relevant Insurance Policies

### A.  The Zurich Policies

Plaintiffs' Amended Complaint outlines a network of policies issued by Zurich and Steadfast that are potentially implicated in this matter.  It sorts these policies into three groups: (1) the "Zurich-Sotera Pollution Policy;" (2) the "Zurich-GMSI/IBA Policies;" and (3) the "Zurich-Griffith Policies."[22]  The precise details of these policies are not necessary to resolve the present motions; instead, an overview suffices.

---

[18] *Id.* ¶ 67.
[19]  Pls.' Br. in Opp'n to Mot. to Dismiss or Stay, Ex. E (D.I. 138).
[20]  Louis Bové Certification in Opp'n to Mot. to Dismiss or Stay ("Bové Cert.") ¶¶ 9–10 (D.I. 138).
[21] *Id.* ¶¶ 11–12.
[22]  Am. Compl. ¶¶ 71–156.

Steadfast issued the Zurich-Sotera Pollution Policy to Sotera Health Holdings LLC.[23] Its policy period ran from July 2018 to July 2021.[24] As its label suggests, it insured against losses resulting from defined pollution events.[25] Plaintiffs allege that the applicable $10 million limit was exhausted in November 2020.[26]

The Zurich-GMSI/IBA Policies are six commercial general liability policies issued by ZAIC. The first five of these policies were issued to Griffith Micro Science International, Inc. and collectively ran from September 1999 to January 2004.[27] The sixth policy was issued to Ion Beam Applications, Inc. and ran from January 2004 to January 2005.[28] Certain of the Zurich-GMSI/IBA Policies name additional insured entities and contain "Broad Named Insured Endorsements."[29] Nevertheless, Plaintiffs allege Sterigenics and Sotera are "not identified as a Named Insured on any of the Zurich-GMSI/IBA Policies."[30] These policies contain an exclusion for losses resulting from certain defined pollution.[31]

Turning to the Zurich-Griffith Policies, Plaintiffs' Amended Complaint breaks them into four subsets: (1) the "1985-1999 Zurich-Griffith Policies;" (2) the

---

[23] *Id.* ¶ 72.
[24] *Id.*
[25] *Id.* ¶ 74.
[26] *Id.* ¶ 79.
[27] *Id.* ¶ 83.
[28] *Id.*
[29] *Id.* ¶¶ 85–87.
[30] *Id.* ¶¶ 94–95.
[31] *Id.* ¶ 101.

"1996 to 1999 Zurich-Griffith XS Policies;" (3) the "Post-Sale Zurich-Griffith CGL Policies;" and (4) the "Post-Sale Zurich-Griffith UMB Policies."

The 1985-1999 Zurich-Griffith Policies are a series of occurrence-based commercial general liability policies issued by ZAIC either individually or as successor-in-interest to ZIC.[32] Zurich alleges that fourteen policies were issued with policy periods collectively running from September 1985 to September 1999.[33] Griffith Laboratories, Inc. and a sequence of Griffith subsidiaries were named insureds throughout that period.[34] Zurich contends that Sotera and Sterigenics were not named insureds under any of these policies.[35] The 1985-1999 Zurich-Griffith Policies had a variety of pollution exclusions in effect at different times during the relevant period.[36]

The 1996 to 1999 Zurich-Griffith XS Policies are three high excess indemnity policies that collectively ran from September 1996 to September 1999.[37] ZAIC, as successor-in-interest to ZIC, issued the first two policies, and AZIC issued the third.[38] Griffith Laboratories, Inc. was the named insured on the first and third policies, and Griffith Micro Science, Inc. was named on the second.[39] Again, Zurich

---

[32] *Id.* ¶ 105.
[33] *Id.*
[34] *Id.* ¶¶ 105–06.
[35] *Id.* ¶¶ 108–09.
[36] *Id.* ¶¶ 114–19.
[37] *Id.* ¶ 121.
[38] *Id.*
[39] *Id.*

says Sterigenics and Sotera are not named insureds under these policies.[40] These policies, too, contain specific pollution exclusions.[41]

The Post-Sale Zurich-Griffith CGL Policies are eleven occurrence-based commercial general liability policies issued by ZAIC to Griffith Laboratories, Inc. following the 1999 sale of Griffith Micro Science International, Inc.[42] The first two ran from September 1999 to September 2001, and the rest collectively ran from July 2006 to October 2015.[43] Zurich alleges that none of the relevant Griffith subsidiaries, nor Sterigenics and Sotera, are named insureds under the Post-Sale Zurich-Griffith CGL Policies.[44] Different pollution exclusions applied at different times under this set of policies.[45]

Last, the Post-Sale Zurich-Griffith UMB Policies are a set of eight commercial umbrella polices that collectively ran from July 2006 to October 2014.[46] These policies were issued by AGLIC to Griffith Laboratories, Inc., and Plaintiffs again contend that no relevant Griffith subsidiary, nor Sterigenics, nor Sotera were

---

[40] *Id.* ¶¶ 122–23

[41] *Id.* ¶¶ 129–30.

[42] *Id.* ¶ 132.

[43] *Id.*

[44] *Id.* ¶¶ 133–35.

[45] *Id.* ¶¶ 140–41.

[46] *Id.* ¶ 143.

named insureds.[47]  A series of pollution exclusions were included in these successive policies, too.[48]

### B. The Defendant Insurers' Policies

The details of the Defendant Insurers' policies are similarly inessential to resolution of Defendants' motions.  Indeed, Plaintiffs' primary position is that coverage is not available to Sterigenics and Sotera under any of its policies in the first place, so it need not seek contribution from any of the Defendant Insurers.[49]  Plaintiffs brought the Defendant Insurers into this action only as a means to seek alternative relief.[50]

For present purposes, it is enough to say that each Defendant Insurer issued policies that Plaintiffs believe Sotera and Sterigenics "may contend are implicated by the Underlying EtO Lawsuits."[51]  As with many of the Zurich-issued policies, most of the Defendant Insurers' policies identified in the Amended Complaint predate the 1999 sale of Griffith Micro Science International, Inc.[52]  Accordingly, the extent to which Sterigenics and Sotera can obtain coverage under their predecessors' policies is relevant to both of Plaintiffs' claims for relief.

---

[47]  *Id.* ¶¶ 143–46.
[48]  *Id.* ¶¶ 151–55.
[49]  *Id.* ¶¶ 186-87.
[50]  *Id.*
[51]  *Id.* ¶¶ 157–63.
[52]  *Id.*

## III.    The Litigation in Illinois

The core of Defendants' motions is the fact that other lawsuits regarding insurance coverage for the EtO Litigation are already pending. Defendants identify three other actions that purportedly address issues Plaintiffs now seek to litigate here: (1) the "National Union Litigation;" (2) the "Wassau Litigation;" and (3) the "Griffith Litigation."

### A.  The National Union Litigation

In August 2021, Sterigenics filed suit against National Union Fire Insurance Company ("National Union") in the United States District Court for the Northern District of Illinois.[53] That suit sought coverage for losses related to the EtO Litigation under policies issued to Sterigenics's predecessor.[54] In November 2021, Griffith filed an action in the same court that likewise sought coverage for the EtO Litigation from National Union.[55]

An August 2022 decision in those related cases addressed National Union's duty to defend Griffith and Sterigenics.[56] Applying Illinois law, the court found that Sterigenics was a successor to a Griffith subsidiary, which "raise[d] at least the

---

[53] *See* Aff. of Bradley Dlatt in Supp. of Def. Griffith Foods International Inc.'s Mot. ("Dlatt Aff."), Ex. 9 (D.I. 101).

[54] *Id.* ¶ 2.

[55] *See* Dlatt Aff., Ex. 10.

[56] *Sterigenics, U.S., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 619 F. Supp. 3d 852 (N.D. Ill. 2022).

'possibility' that Sterigenics is covered as a 'named insured.'"[57]  The court also expressed doubt as to the applicability of the relevant pollution exclusion.[58] Accordingly, the court found National Union had a duty to defend both Griffith and Sterigenics, though it did not rule on National Union's indemnity obligations.[59]

## B. The Wausau Litigation

The next EtO-related coverage dispute was the Wausau Litigation.  There, in November 2022, Employers Insurance of Wausau ("Wausau") filed suit against Griffith in the Circuit Court of Cook County, Illinois.[60]  Wausau sought a declaratory judgment that it owed no duty to defend or indemnify Griffith with regard to the EtO Litigation.[61]  Plaintiffs originally named Wausau as an additional defendant in this matter but have since dropped Wausau as a named defendant.[62]

## C. The Griffith Litigation

Most pertinent to this matter, Griffith filed suit in the Circuit Court of Cook County, Illinois on January 25, 2023.[63]  There, Griffith sought coverage for the EtO Litigation from Zurich, eight of the ten Defendant Insurers named in this action,[64]

---

[57]  *Id.* at 861 (quoting *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 816 (7th Cir. 2010)).

[58]  *Id.* at 862–64.

[59]  *Id.* at 869.

[60]  *See* Dlatt Aff., Ex. 12.

[61]  *Id.* ¶ 6.

[62]  *Compare* Compl. ¶ 19 (D.I. 1), *with* Am. Compl. ¶¶ 15–33.

[63]  *See* Dlatt Aff., Ex. 2.

[64]  The two Defendant Insurers in this action not named in the Griffith Litigation are National Union and Sentry Insurance Company.  *Compare* Am. Compl. ¶¶ 18-29, *with* Dlatt Aff., Ex. 3

and others.[65]  In the Griffith Litigation, Griffith identified many of the same Zurich-Griffith Policies listed in Plaintiffs' Amended Complaint.[66]  In May 2023, after Plaintiffs' Complaint in this action was filed, Sterigenics and Sotera moved to intervene in the Griffith Litigation, seeking coverage based on their purported status as a successor to Griffith's subsidiary.[67]  On August 23, 2023, the Griffith Litigation and the Wausau Litigation were consolidated.[68]

## PROCEDURAL HISTORY

Plaintiffs initiated this action by filing a Complaint on February 27, 2023.[69]  They then filed an Amended Complaint on June 14, 2023.[70]  On June 29, 2023, Griffith moved to dismiss Plaintiffs' Amended Complaint or stay this matter.[71]  The next day, Chubb, Federal, Oakwood, and Central jointly moved for the same relief.[72]  Also on June 30, 2023, Sterigenics and Sotera filed a similar motion.[73]  Plaintiffs'

---

¶¶ 7–17.  Both the Amended Complaint here and the amended complaint in the Griffith Litigation include as defendants yet-unidentified insurers that may become known.  Am. Compl. ¶ 32; Dlatt Aff., Ex. 3 ¶ 18.

[65]  Dlatt Aff., Ex. 3 ¶¶ 7–17.

[66]  *Compare* Am. Compl. ¶¶ 105, 121, 132, 143, *with* Dlatt Aff., Ex. 3 ¶¶ 46, 67.

[67]  Dlatt Aff., Ex. 6.

[68]  Dlatt Aff., Ex. 18.

[69]  Compl.

[70]  Am. Compl.

[71]  Def. Griffith International Inc.'s Mot. to Dismiss or Stay ("Griffith's Op. Br.") (D.I. 101).

[72]  Defs. Chubb Custom Insurance Company, Federal Insurance Company, Oakwood Insurance Company, and Central National Insurance Company's Mot. to Dismiss or Stay ("Chubb's Op. Br.") (D.I. 103).

[73]  Defs. Sterigenics U.S., LLC and Sotera Health LLC's Mot. to Dismiss or Stay ("Sterigenics's Op. Br.") (D.I. 104).

11

submitted an Answering Brief in response to the three motions on August 11, 2023.[74]

Defendants filed their respective replies on August 31 and September 1, 2023.[75] The

Court heard oral argument on October 24, 2023, and reserved decision.[76]

## STANDARD OF REVIEW

Superior Court Civil Rule 12(b)(3) permits a defendant to move to dismiss or

stay an action based on improper venue.[77] Motions to stay in favor of litigation

elsewhere are not granted as a matter of right;[78] instead, the decision "rests within

the sound discretion of the trial court."[79] While the burden of establishing a basis

for relief lies with the defendant,[80] the Court "is not shackled to the plaintiff's

complaint and is permitted to consider extrinsic evidence from the outset."[81]

The burden the defendant must carry depends on the context of the action. A

typical *forum non conveniens* motion is reviewed against the familiar *Cryo-Maid*[82]

---

[74] Pls.' Omnibus Br. in Resp. to Mots. to Dismiss or Stay ("Pls.' Opp'n Br.") (D.I. 138).

[75] Def. Griffith Foods International Inc.'s Reply in Supp. of its Mot. to Dismiss or Stay ("Griffith's Reply Br.") (D.I. 151); Defs. Sterigenics U.S. LLC and Sotera Health LLC's Reply Br. in Supp. of their Mot. to Dismiss or Stay ("Sterigenics's Reply Br.") (D.I. 152); Chubb Defs.' Reply Br. in Supp. of their Mot. to Dismiss or Stay ("Chubb's Reply Br.") (D.I. 153).

[76] Judicial Action Form (D.I. 170).

[77] Super. Ct. Civ. R. 12(b)(3). *See also Ent. Data Oracle, Inc. v. iSpot.tv, Inc.*, 2022 WL 17481944, at *2 (Del. Super. Dec. 7, 2022).

[78] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970).

[79] *CVR Refin., LP v. XL Specialty Ins. Co.*, 2021 WL 3523925, at *7 (Del. Super. Aug. 11, 2021) (citing *BP Oil Supply Co. v. Conoco Phillips Co.*, 2010 WL 702382, at *2 (Del. Super. Feb. 25, 2010)).

[80] *See CVR Refin.*, 2021 WL 3523925, at *7.

[81] *Sperling & Slater v. SilkRoad, Inc.*, 2022 WL 16910563, at *1 (Del. Super. Nov. 14, 2022) (quoting *Loveman v. Nusmile, Inc.*, 2009 WL 847655, at *2 (Del. Super. Mar. 31, 2009)).

[82] *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964).

factors.[83]  But where a related action filed in another jurisdiction predates the Delaware action, the *McWane*[84] factors apply.[85]  In that setting, if there is (1) "a prior action pending elsewhere; (2) in a court capable of doing prompt and complete justice; (3) involving the same parties and the same issues[,]" then "*McWane* and its progeny establish a strong preference for the litigation of a dispute in the forum in which the first action was filed."[86]

## ANALYSIS

### I.  Each *McWane* factor is satisfied, and therefore, Defendants' motions to stay this action are GRANTED.

In light of the Griffith Litigation, Defendants' motions will be viewed under the less-demanding *McWane* framework.  Defendants carry their burden of establishing all three prongs.  Accordingly, a stay of this action until the Griffith Litigation is resolved is warranted.

---

[83]  Those factors are:

> (1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises, if appropriate; (4) all other practical problems that would make the trial of the case easy, expeditious and inexpensive; (5) whether or not the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction; and (6) the pendency or nonpendency of a similar action in another jurisdiction.

*Sperling*, 2022 WL 16910563, at *2 (quoting *Gramercy Emerging Mkts. Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1036–37 (Del. 2017)).

[84] *McWane*, 263 A.2d at 283.

[85]  *Sperling*, 2022 WL 16910563, at *2 (citing *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 234 A.3d 1186, 1194 (Del. Super. 2020)).

[86]  *Id.* (citations omitted).

13

### A. The Griffith Litigation is a first-filed action.

The first prong—whether the Griffith Litigation was filed before this action—is straightforward in this instance. Plaintiffs do not contend this was a "race to the courthouse" that might suggest the actions should be deemed contemporaneously filed.[87] Rather, Plaintiffs' Complaint was filed a full month after the Griffith Litigation commenced.[88] While there is no bright-line rule for when two actions should be considered contemporaneously filed,[89] the month-long separation here precludes serious debate on this point.[90] The first prong is therefore established.

### B. The Illinois courts are capable of doing prompt and complete justice.

Whether the Circuit Court of Cook County, Illinois is capable of doing prompt and complete justice requires only slightly more analysis. At the outset, the Court notes that the Illinois state courts are well-acquainted with the deluge of litigation flowing from the Willowbrook plants' EtO pollution. Plaintiffs' Answering Brief does little to directly address this prong. Instead, Plaintiffs incorporate arguments pertaining to the third prong and color them as addressing whether the Illinois courts

---

[87] *See CVR Refin.*, 2021 WL 3523925, at *8.

[88] After the Griffith Litigation and Wausau Litigation were consolidated, the relevant first-filing date was arguably moved back to November 2, 2022—*i.e.*, the date the Wausau Litigation commenced. *See* Griffith's Reply Br. at 12–13. In light of the Court's decision applying the January 2023 filing date, it need not reach that issue.

[89] *CVR Refin.*, 2021 WL 3523925, at *8 (quoting *Royal Indem. Co. v. Gen. Motors Corp.*, 2005 WL 1952933, at *2 n. 18 (Del. Super. July 26, 2005)).

[90] *Cf. Bright Data, Inc. v. Meta Platforms, Inc.*, 2023 WL 5322293, at *3–4 (Del. Super. Aug. 18, 2023) (holding twenty-four-day difference in filing dates was sufficient to implicate *McWane*).

can do "complete" justice without an identity of issues.[91]  As explained more fully in the next section, perfect identity of issues is not needed to warrant a stay under *McWane*.[92]  Aside from noting that a court may reject intervenor motions that would unduly complicate a litigation—a peril that appears foregone in the already complex, consolidated Griffith and Wausau Litigations—Plaintiffs do not explain why the Illinois courts would be *incapable* of deciding coverage issues as to Sterigenics and Sotera.

During oral argument, Plaintiffs emphasized that a motion had been filed in Illinois to replace the judge overseeing the Griffith Litigation.  While the availability of a judge is relevant to this prong,[93] this concern is overstated by Plaintiffs.  Under Illinois law, "[e]ach party shall be entitled to one substitution of judge without cause as a matter of right."[94]  Illinois-based counsel present at oral argument represented that such motions are a routine part of civil practice in that state.  Particularly bearing in mind the comity concerns that undergird *McWane*,[95] the Court will not hold that

---

[91]  *See* Pls.' Opp'n Br. at 32–35.

[92]  *See Kurtin v. KRE, LLC*, 2005 WL 1200188, at *4 (Del. Ch. May 16, 2005).

[93]  *See, e.g.*, *Joyce v. Cuccia*, 1996 WL 422339, at *5 (Del. Ch. July 24, 1996) (holding the "prompt" justice prong was unsatisfied where a pending judicial election would delay the other litigation).

[94]  735 ILCS 5/2-1001(a)(2)(i).

[95]  *McWane*, 263 A.2d at 283.

a statutory procedural rule casts doubt upon the Illinois courts' ability to efficiently resolve this matter.[96]  Thus, the second prong is also satisfied.[97]

## C. The parties and issues are substantially the same.

The final prong—the overlap of the parties and issues—is the crux of this dispute.  Undeniably, this action is not a perfect mirror image of the Griffith Litigation.  Each suit presently names parties the other does not, and each suit presently identifies a different insured as the primary focus.  Nevertheless, most of the parties and insurance policies, in addition to the underlying alleged misconduct, are common across the two actions.

*McWane* does not require perfect parallels in competing litigation.  Instead, "the Court has broad discretion to grant a stay where the facts and circumstances warrant it."[98]  It follows that "[c]onsistent with the *McWane* doctrine generally, the 'same parties, same issues' analysis focuses on substance over form."[99]  Accordingly, as opposed to perfection, the Court looks for "substantial or functional

---

[96] *See Ritchie v. Huizenga Managers Fund, LLC*, 2017 WL 7803924, at *2 (Del. Super. Dec. 21, 2017) (holding "the Circuit Court of Cook County, Illinois is capable of 'doing prompt and complete justice.'") (quoting *McWane*, 263 A.2d at 283).

[97] Further allaying this concern, the Court's review of the Griffith Litigation's publicly accessible docket information suggests a new judge has already been assigned.  *See Online Case Search*, CLERK OF THE CIR. CT. OF COOK CNTY., https://casesearch.cookcountyclerkofcourt.org/CivilCaseSearchAPI.aspx (last visited Jan. 26, 2024).

[98] *Bright Data, Inc.*, 2023 WL 5322293, at *3 (citing *McWane*. 263 A.2d at 283).

[99] *Kurtin*, 2005 WL 1200188, at *4.  *See also Park G.P., Inc. v. CCSB Fin. Corp.*, 2020 WL 7706962, at *2 (Del. Ch. Dec. 29, 2020) (finding even where "*McWane* is not a perfect fit, a *McWane*-like stay" may be "appropriate" based on "the policy rationale underlying the *McWane* factors").

16

identity" between the competing actions.[100]  That substantial identity exists where the two actions share a "common nucleus of operative fact."[101]

In this analysis, the Court must also consider policy concerns such as "whether allowing both actions to proceed 'in tandem would either risk conflicting rulings or foster an unseemly race to judgment in each forum.'"[102]  The *Cryo-Maid* factors serve as useful guidance in the Court's exercise of discretion.[103]  At bottom, the level of similarity required to grant a stay ebbs and flows with the weight of the practical considerations favoring one.[104]

### 1. The similarity of the parties

As for the similarity of the parties, the very slight mismatch between the groups of insurers named in this action and in the Griffith Litigation does not counsel against a stay.  First, the complaints in both cases list fictitious insurers as defendants on the explicit basis that additional insurers may need to be added.[105]  The possibility of joinder suffices to make the parties "substantially identical."[106]  In any event, the

[100]  *Ent. Data Oracle, Inc*, 2022 WL 17481944, at *5 n.53 (quoting *Tulum Mgmt. USA LLC v. Casten*, 2015 WL 7456003, at *2 (Del. Ch. Nov. 20, 2015)).

[101]  *Bright Data, Inc.*, 2023 WL 5322293, at *4 (quoting *Tulum Mgmt.*, 2015 WL 7456003, at *2).

[102]  *Choice Hotels Int'l, Inc. v. Columbus-Hunt Park Dr. BNK Invs., L.L.C.*, 2009 WL 3335332, at *7 (Del. Ch. Oct. 15, 2009) (quoting *Xpress Mgmt., Inc. v. Hot Wings Int'l, Inc.*, 2007 WL 1660741, at *5 (Del. Ch. May 30, 2007)).

[103]  *See Bright Data, Inc.*, 2023 WL 5322293, at *6.

[104]  *Id.* at *4 (citing *Playtex, Inc. v. Columbia Cas. Co.*, 1989 WL 40913, at *3 (Del. Super. Apr. 25, 1989)).

[105]  Am. Compl. ¶ 32; Dlatt Aff., Ex. 3 ¶ 18.

[106]  *Kurtin*, 2005 WL 1200188, at *4 (first citing *Macklowe v. Planet Hollywood, Inc.*, 1994 WL 586835, at *3 (Del. Ch. Oct. 4, 1994); and then citing *Corwin v. Silverman*, 1999 WL 499456, at *4 n.13 (Del. Ch. June 30, 1999)).

large majority of insurers named in this action are already parties to the Griffith Litigation.[107]

The Court turns now to Sterigenics and Sotera. Both entities have already moved to join the Griffith Litigation.[108] In *Kurtin*, the Court of Chancery made clear that "substantial or functional identity" is broader than "a parent/subsidiary or predecessor/successor relationship."[109] Rather, this requirement "has been met by 'related entities,' somewhat overlapping parties, and persons in privity with the parties."[110] As explained, Sterigenics is Sotera's subsidiary and is a successor to a Griffith subsidiary. That connection is how Sterigenics obtained defense coverage under Griffith's policies in the National Union Litigation,[111] and is why Zurich seeks resolution of Sotera and Sterigenics rights under the Zurich-Griffith Policies here.[112] In sum, Sterigenics, Sotera, and Griffith have closely aligned interests as to the policy determinations at issue here and are materially related with regard to this litigation.

### 2. The similarity of the issues

Much of the overlap in issues between this case and the Griffith Litigation is due to Sterigenics and Sotera's claims to coverage under policies issued to Griffith.

---

[107] *See supra* note 64.
[108] Dlatt Aff., Ex. 6.
[109] *Kurtin*, 2005 WL 1200188, at *5.
[110] *Id.* (citations omitted).
[111] *National Union*, 619 F. Supp. 3d at 861–64.
[112] Pls.' Opp'n Br. at 13.

Thirteen of Plaintiffs' seventeen stated grounds for denying coverage are based on interpretations of Zurich policies that could impact Griffith's rights under those policies.[113] The four remaining grounds assert that Sterigenics and Sotera are not insureds under the Zurich policies to begin with.[114] In other words, the bulk of Plaintiffs' requested relief seeks interpretations of the Zurich-Griffith Policies with regard to Sterigenics and Sotera. Importantly, those interpretations would also bear on Griffith.

That circumstance demonstrates the "common nucleus of operative fact" tying this action to the Griffith Litigation.[115] Specifically, Griffith, Sterigenics, and Sotera engaged in substantially the same alleged misconduct while operating the Willowbrook plants. Griffith, Sterigenics, and Sotera now seek insurance coverage for those acts under many of the same insurance policies. That shared core of facts creates substantial overlap between the issues in this case and the Griffith Litigation.

### 3. The relevant policy considerations

Practical concerns weigh heavily in this analysis.[116] First, the risk of conflicting rulings is clear. If this case were to be litigated contemporaneously with the Griffith Litigation, this Court and the Illinois court would be simultaneously

---

[113] Am. Compl. ¶¶ 170–82.
[114] *Id.* ¶¶ 166–69.
[115] *See Bright Data, Inc.*, 2023 WL 5322293, at *4.
[116] *Choice Hotels*, 2009 WL 3335332, at *7.

tasked with interpreting the Zurich-Griffith Policies. The resulting possibility of differing conclusions would be ineluctable. An additional risk would be present in this insurance dispute: the exhaustion of policy limits in one case before the other is decided. That possibility would incentivize "an unseemly race" to judgment—a result the *McWane* court explicitly sought to avoid.[117]

The applicable *Cryo-Maid* factors likewise counsel toward a stay. Unquestionably, Illinois has a closer relationship to this dispute both legally and factually. Apart from serving as the state of incorporation or formation for some of the parties, Delaware has virtually no connection to the underlying events or insurance policies at issue. Moreover, it would be needlessly taxing for both the courts and the litigants to pursue these closely related cases in two different jurisdictions at the same time. "A court may grant a stay on the basis of comity, efficiency, or common sense[;]"[118] here, all three dictate that result.

## II. Defendants' motions to dismiss this action are DENIED.

Defendants seek the more extraordinary relief of dismissing Plaintiffs' Amended Complaint. The Court declines this request. "While '[a] party may move for either a stay or dismissal under *McWane*, . . . dismissals are rarely granted when

---

[117] *McWane*, 263 A.2d at 283.

[118] *Ent. Data Oracle, Inc.*, 2022 WL 17481944, at *4 (internal quotation marks omitted) (quoting *LightLab Imaging, Inc. v. Axsun Techs., Inc.*, 2012 WL 1764225, at *1 (Del. Ch. May 10, 2012)).

20

the first-filed doctrine is invoked.'"[119]  That is so because "it is impossible to predict with certainty the course of earlier-filed litigation in another jurisdiction."[120]  Here, it is possible that questions about Sterigenics and Sotera's coverage for the EtO Litigation will outlive the Griffith Litigation.  In that event, it would be appropriate for Plaintiffs to resume this action to settle those lingering issues.  A dismissal at this stage would unnecessarily hinder that process.

In a departure from the other movants, Griffith also seeks dismissal based upon the even more burdensome *Cryo-Maid* factors.[121]  This argument is similarly unavailing.  Under *Cryo-Maid*, "dismissal should occur only in rare cases and only where an overwhelming hardship has been shown."[122]  Griffith's argument falls well short of that demanding standard.  In brief, Griffith's arguments pertain to why Illinois is a more convenient forum than Delaware—not why Delaware is itself a burdensome forum.  That is not enough.[123]  Griffith—a Delaware corporation—has

---

[119]  *Id.* at *2 (alteration and omission in original) (quoting *Riordan Ltd. v. IVN Consulting, LLC*, 2021 WL 2879786, at *4 (Del. Ch. July 9, 2021)).
[120]  *Id.* (quoting *Riordan Ltd.*, 2021 WL 2879786, at *4).
[121]  Griffith's Op. Br. at 24–32.
[122]  *Petit v. Tri-State Wholesale Flooring, LLCO*, 2023 WL 4144751, at *4 (Del. Super. June 22, 2023).
[123]  *See Mar-Land Indus. Contrs., Inc. v. Caribbean Petro. Refin., L.P.*, 777 A.2d 774, 778 (Del. 2001) ("It is insufficient . . . that another court would be a more appropriate forum.") (internal quotation marks omitted) (quoting *Ison v. E.I. DuPont de Nemours & Co.*, 729 A.2d 832, 838 (Del. 1999)).

not shown that it will suffer a "manifest hardship" by being made to litigate in Delaware.[124]  Thus, a dismissal under *Cryo-Maid* is unwarranted.

## CONCLUSION

In conclusion, Defendants' Motions to Stay or Dismiss are GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

---

[124]  *Id.* (quoting *Ison*, 729 A.2d at 842).