# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FOLLETT CONTENT SOLUTIONS,  )
LLC,                         )
      Plaintiff,           )
                           )
                           )
      v.                   )    C.A. No. N25C-09-070 PAW CCLD
                           )
                           )
LITERATI, INC.,              )
                           )
      Defendant.           )

Submitted: May 13, 2026
Decided: June 18, 2026

## <u>MEMORANDUM OPINION</u>

*Upon Defendant's Motion to Dismiss or Stay;*
**GRANTED.**

Alessandra Glorioso, Esq.; and Case Collard, Esq., of Dorsey & Whitney LLP; Paige Arnette Amstutz, Esq., of Scott Douglass & McConnico LLP, *Attorneys for Plaintiff Follett Content Solutions, LLC*.

Katharine L. Mowery, Esq., of Richards, Layton, & Finger, P.A.; Katherine P. Chiarello, Esq., of Botkin Chiarello Calaf, *Attorneys for Defendant Literati, Inc*.

**WINSTON, J.**

## I.    <u>INTRODUCTION</u>

This case involves a dispute between the buyer and seller of a book fair business.  As part of the sale, the buyer agreed to maintain the seller's popular loyalty rewards program through a separate agreement.  Shortly after executing the agreement, the buyer fell behind on its financial obligations under the rewards program, leading to a dispute over whether the seller's invoicing method complied with the agreement's terms.

The buyer filed a lawsuit in a Texas state court, initially seeking information under an audit rights provision to determine if the seller was entitled to invoice the buyer for the claimed amounts.  Three weeks later, the buyer amended its complaint, seeking a declaration that the seller was not entitled to invoice those amounts.  Subsequently, the seller initiated this action in Delaware.  The Texas complaint was amended once more, after the instant motion was filed.  The buyer's motion to dismiss asks the Court to dismiss or stay the Delaware action in favor of the Texas action, arguing that the Texas action was first-filed and should be given deference under the *McWane* doctrine.  For the reasons outlined below, this action is stayed in favor of the first-filed Texas action.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In January of 2022, Plaintiff Follett Content Solutions, LLC sold its book fair business to Defendant Literati, Inc.[1] A month later, in an agreement titled the "Titlewave Rewards Program Service Agreement" (the "Agreement") dated February 28, 2022, Follett agreed to provide certain fulfillment services related to Literati's book fairs.[2] Specifically, Follett agreed to provide services related to its reward program (the "Program"), in which customers earn rewards which allow them to purchase more books and resources through Follett's e-commerce site, Titlewave.[3] Follett agreed to organize the Program for Literati's book fairs, prepare the Program's gift certificates, and manage the logistics of shipping books and merchandise to customers redeeming them through the Program.[4] In exchange, Literati agreed to exclusively promote the Program at its book fairs.[5]

When a customer opted into the Program, Literati was to assign the customer a unique code, provide the code along with customer information to Follett, and notify the customer of its Titlewave reward gift certificate amount.[6] When Follett

---

[1] D.I. 1 (hereinafter "Compl.") ¶ 23.

[2] Compl. ¶ 25; *See* Compl. Ex. 1 (hereinafter the "Agreement").

[3] Compl. ¶ 27.

[4] *Id.*

[5] *Id.* ¶ 28.

[6] *Id.* ¶ 29.

created the gift certificate and made it available to the customer for redemption, it was to send Literati an invoice.[7] Within five business days after Follett sent the invoice, Literati was to pay two-thirds of the printed value of each gift certificate issued by Follett to a customer as part of the Program.[8] The Agreement also provided that either party could terminate if the other party materially breached and failed to cure within 30 days of receiving notice of its breach, or 10 days if the breach was due to non-payment.[9]

After the Agreement went into effect, Literati frequently made late payments, and eventually fell behind on its obligations, which it acknowledged.[10] The parties discussed Literati's default, and Literati assured Follett it would pay its outstanding balance.[11] However, on August 7, 2025, Follett provided Literati a notice of default (the "Notice of Default"), informing Literati that it owed $2,872,634.25 to Follett for Certificates that Follett provided to Literati's customers.[12] Literati responded to the Notice of Default, stating it was "working through the issues [Follett] raised and

---

[7] *Id.* ¶ 31.

[8] *Id.* ¶ 32.

[9] Compl. ¶ 35; Agreement § 5(b).

[10] Compl. ¶¶ 37-41.

[11] *Id.* ¶¶ 42-45.

[12] *Id.* ¶ 46.

4

wanted to provide a 'thoughtful response,' and that it planned to do so 'early [in the week of August 18th].'"[13]

On August 19, Literati sent a letter purporting to exercise certain audit rights it was entitled to under the Agreement, and filed a complaint against Follett in the Travis County District Court in the State of Texas (the "Initial Petition" in the "Texas Action") alleging that Follett breached the Agreement's audit rights provisions.[14] However, Literati did not notify Follett of its breach as required by the Agreement's notice provision before filing suit.[15] Follett demanded Literati withdraw its suit, but Literati refused.[16] Literati amended its complaint in Texas on September 8, 2025 (the "Amended Petition"), seeking a declaratory judgment that Follett was not entitled to invoice Literati for Literati's two-thirds share of the value of the rewards received by a school under the Program until after the school had *redeemed* its gift certificates (as opposed to when the gift certificates were issued).[17] It amended its complaint once more on January 9, 2026—after briefing on this motion had closed—adding two claims: one for improper termination of the Agreement, and another for

---

[13] Pl.'s Opp'n 15-16 (quoting Pl.'s Opp'n Ex. E).

[14] Compl. ¶¶ 50-51. *See* D.I. 10 (hereinafter "Mot. Dismiss") Ex. 2 (hereinafter "Initial Petition").

[15] Compl. ¶¶ 53-54.

[16] *Id.* ¶¶ 58-59.

[17] *See* Mot. Dismiss Ex. 3 (hereinafter "Amended Petition").

breach of the implied covenant (the "Second Amended Petition").[18] Follett sought dismissal of the Texas Action, contending the Texas court lacks jurisdiction over Follett.[19] However, the Texas court denied Follett's motion, meaning the Texas Action will proceed.[20]

The day after Literati filed its Amended Petition, on September 9, 2025, Follett brought suit in Delaware (the "Delaware Action"), bringing two counts of breach of contract.[21] Count I alleges breach of contract for Literati's failure to pay its outstanding balance in a timely manner.[22] Count II alleges breach of contract for Literati's failure to follow the Agreement's notice and cure provision before filing suit in Texas.[23] On November 5, Literati moved to dismiss or stay the complaint under Rule 12(b)(3), contending this action should be dismissed or stayed in favor of the Texas Action.[24] Follett submitted its brief in opposition,[25] to which Literati replied. This Court heard oral argument and took the matter under advisement.

---

[18] *See* D.I. 59 Ex. 1 (hereinafter "Second Amended Petition").

[19] Mot. Dismiss Ex. K.

[20] *See* D.I. 72.

[21] *See generally* Compl.

[22] *Id.* ¶¶ 60-66.

[23] *Id.* ¶¶ 67-72.

[24] *See generally* Mot. Dismiss.

[25] *See generally* D.I. 31 (hereinafter "Pl.'s Opp'n").

## III. STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(3), based on *forum non conveniens*, "'this Court exercises its sound discretion when making findings of fact and drawing conclusions therefrom' by using 'an orderly and logical deductive process.'"[26] "A motion raising *forum non conveniens* is a request that a court possessing both personal and subject matter jurisdiction over an action nevertheless decline to hear it."[27] In deciding these motions, the principal issue before the Court is whether a "prior pending" action exists between the parties. The answer will determine the applicable standard the Court applies to the motions.[28]

The Supreme Court's decision in *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*[29] provides the framework for this Court's analysis in the context of a first-filed action in another forum. A *McWane* analysis asks "(1) is there a prior action pending elsewhere; (2) in a court capable of doing prompt and complete justice; (3) involving the same parties and the same issues? If all three criteria are

---

[26] *Arrowood Indemnity Co. v. AmerisourceBergen Corp.*, 2023 WL 2726924, at *8 (Del. Ch. Mar. 30, 2023) (quoting *In re CVS Opioid Ins. Litig.*, 2022 WL 3330427, at *3 (Del. Super. Aug. 12, 2022)).

[27] *Id*. (quoting *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 234 A.3d 1186, 1193 (Del. Super. 2020)).

[28] *See id*. (explaining different standards apply to a *forum non conveniens* motion depending on the parties' litigation history).

[29] 263 A.2d 281 (Del. 1970).

met, '*McWane* and its progeny establish a strong preference for the litigation of a dispute in the forum in which the first action' was filed."[30] Finally, "[i]n addition to the comity considerations articulated in *McWane*, [Delaware Courts], in assessing motions to stay Delaware litigation under the first-filed rule, frequently analyze[] the same 'practicality' factors traditionally applied under the *forum non conveniens* doctrine."[31]

## IV. <u>ANALYSIS</u>

Defendant raises two primary arguments. First, the Texas Action was the first filed action in this matter, involving the same parties and issues. Second, the *Cryo-Maid* factors weigh in favor of dismissal. Because the Court agrees that the Texas Action was first filed and is entitled to greater deference under *McWane*, the Court grants Defendant's motion to stay.

### A. THE TEXAS ACTION CONSTITUTES A FIRST-FILED ACTION.

A threshold question when applying the *McWane* doctrine is whether there is a prior pending action elsewhere.

---

[30] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246, 1252 (Del. 2015) (quoting DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 5.01, at 5-3 (2013)).

[31] *Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1038 (Del. 2017) (quoting WOLFE & PITTENGER, § 5.01 (2017)).

## 1.   THE TEXAS ACTION IS A PRIOR PENDING ACTION.

Literati notes that it commenced the Texas Action by filing the Initial Petition on August 19, 2025, three weeks before Follett initiated the Delaware Action on September 9, 2025.[32]   Accordingly, it contends "there is no reasonable basis to dispute that the Texas Action warrants first filed status."[33]   Follett responds that the actions were filed contemporaneously, noting that Literati's Amended Petition was filed in the Texas Action on September 8, just one day before Follett initiated the Delaware Action.[34]   Follett insists that the Amended Petition does not relate back to the Initial Petition, because the Initial Petition concerned Literati's audit rights under the Agreement, while the Amended Petition seeks a declaratory judgment concerning its payment obligations under the Agreement.[35]   It contends that the Delaware Action only shares a significant nucleus of facts with the Amended Petition, not the Initial Petition.[36]

When two actions are filed contemporaneously, *McWane* does not apply, because in that instance, there is no "first-filed" action as a matter of law.[37]   Courts

---

[32] Mot. Dismiss 13-14.

[33] *Id.* 14.

[34] Pl.'s Opp'n 11-12.

[35] *Id.* 12-14.

[36] *Id.* 14.

[37] *See AR Capital, LLC v. XL Specialty Ins. Co.*, 2019 WL 1932061, at *3 (Del. Super. Apr. 25, 2019).

have evaluated contemporaneousness broadly, noting that "the difference of a few hours or even a few weeks may turn a second-filed action into a contemporaneously filed action for the purposes of *McWane*."[38] In cases such as this, where an otherwise first-filed case has been amended or altered, Delaware courts will compare the original case to the later-filed case. "When the modified action bears little or no resemblance to the original, it may be treated as a new action, thus eliminating claims to first-filed status based on the filing date of the original action."[39] But where the substance of the original case is unchanged in the later-filed case, the court will treat the later-filed action as if it was filed on the original date.[40]

In comparing the Initial Petition to the Amended Petition, the Court finds that the Amended Petition bears sufficient resemblance to the Initial Petition, preserving the first-filed status of the Texas Action. Literati expressly set out in the Initial Petition that the reason it filed the Initial Petition was to enforce its audit rights under the Agreement to determine whether Follett was demanding more money than it was entitled to under the Agreement. Literati specifically alleged in the Initial Petition that "Literati has paid Follett for reward merchandise that Follett has never actually

---

[38] *Jardine on behalf of HealthBookPlus Holdings, Inc. v. Turner*, 2024 WL 1826613, at *2 (Del. Ch. Apr. 25, 2024).

[39] *Choice Hotels Int'l, Inc. v. Columbus-Hunt Park DR. BNK Inv'rs, L.L.C.*, 2009 WL 3335332, at *6 (Del. Ch. Oct. 15, 2009) (internal quotations omitted).

[40] *Id.*

provided to Literati's book fair customers."[41]  This is fundamentally what is at issue

in its Amended Petition, in which Literati seeks—among other relief—a declaratory

judgment that it is not obligated "to pay Follett two-thirds [] of the value of any

Titlewave Reward Gift Certificates for which Follett has not actually provided

reward merchandise to Literati's book fair customers."[42]  While the relief sought

differs and additional claims are added, the substance of the Initial Petition remains

unchanged in the Amended Petition.  Accordingly, the Amended Petition relates back

to the Initial Petition for *McWane* purposes.[43]

> **2.** **THERE IS NO APPLICABLE EXCEPTION THAT WOULD ALLOW THE COURT TO DISREGARD THE TEXAS ACTION'S CHRONOLOGICAL PRIORITY.**

Follett contends that *McWane* is nevertheless inapplicable because Literati

acted in bad faith by misleading Literati about its litigation plans.  Follett points to

correspondence it had with Literati concerning its notice of default, in which Literati

---

[41] Initial Petition ¶ 10.

[42] Amended Petition ¶ 19.

[43] The Court's analysis mentions only the Amended Petition rather than the Second Amended Petition—the operative pleading in the Texas Action—because the Second Amended Petition was filed after briefing closed in this motion.  The parties did not present arguments about the Second Amended Petition.  However, the Amended Petition and the Second Amended Petition substantially overlap, with the Second Amended Petition adding two additional claims rooted in substantively identical facts.  For the sake of clarity and the avoidance of doubt, because the Second Amended Petition and the Amended Petition are substantively similar, the Second Amended Petition also bears sufficient resemblance to the Initial Petition.

wrote that it was "working through the issues [Follett] raised and wanted to provide a 'thoughtful response,' and that Literati planned to do so 'early [in the week of August 18th].'"[44]  Follett contends that, in fact, Literati was working on its lawsuit, rather than a response to Follett's concerns.[45]

Follett also contends that Literati's declaratory judgment is an attempt to usurp Follett from proceeding with its claim in its choice of forum, because Literati is the natural defendant.[46]  It argues that Literati's Amended Petition was anticipatory, and that it should not be entitled to first-filed status accordingly.

Follett's arguments fail for two reasons.  First, Literati's communication that it was preparing a thoughtful response to Follett's notice—which it provided— cannot reasonably be construed as an indication that Literati was not going to file a lawsuit.  Literati had several options available to it to protect its own rights, and choosing one—providing a thoughtful response to Follett's concerns—does not preclude it from exercising others.

Second, because the Amended Petition relates back to the Initial Petition— filed three weeks before Follett initiated the Delaware Action—the declaratory judgment claim does not merit enhanced scrutiny.  Courts will often look at *McWane*

---

[44] Pl.'s Opp'n 15-16 (quoting Pl.'s Opp'n Ex. E).

[45] *Id.* 16.

[46] *Id.* 17-19.

arguments concerning anticipatory declaratory judgment claims with greater scrutiny in "rush to the courthouse" scenarios where a party files a lawsuit in anticipation of litigation from the opposing party.[47] Here, however, Literati initiated litigation in the Texas Action three weeks before Follett filed the Delaware Action. As previously discussed, the claims in the Amended Petition relate back to the Initial Petition. Therefore, the concerns present in typical "rush to the courthouse" situations are not present here. The Texas Action was first-filed.

B. **THE TEXAS ACTION IS ENTITLED TO GREATER DEFERENCE UNDER *MCWANE*.**

Having established that the Texas Action was first-filed, the Court must now determine whether the Texas Action is entitled to *McWane* deference. Here, both actions involve nearly identical issues and identical parties. Further, the Texas state court is capable of doing prompt and complete justice. Finally, all other discretionary factors favor a stay. Because allowing both actions to proceed would be needlessly duplicative, the Texas Action is entitled to *McWane* deference.

1. **THE TEXAS ACTION AND THE DELAWARE ACTION INVOLVE IDENTICAL PARTIES AND NEARLY IDENTICAL ISSUES.**

*McWane* favors a stay either "where the parties and issues are identical, [or] where there exists 'substantial or functional identity' between the two such that they

---

[47] *See Lincoln Benefit Life Co. v. Wilmington Tr.*, N.A., 2018 WL 3640898, at *4 (Del. Super. July 31, 2018).

13

'arise out of a common nucleus of operative fact.'"[48]  In other words, the claims themselves do not have to be literally identical in each action.  The analysis of whether the parties and claims are the same "focuses on substance over form."[49]  The actions must share a substantial or functional identity arising from a common nucleus of fact.

Literati argues that they do.  Literati contends that the issue in both actions is whether Follett properly invoiced Literati for the Program's gift certificates under the Agreement.[50]  The Court agrees.  Follett's complaint in the Delaware Action seeks damages for breach of contract, claiming that Literati failed to pay for the gift certificate invoices as required by the Agreement.[51]  Literati's complaint in the Texas Action seeks a declaratory judgment that under the Agreement, Follett is not entitled to invoice Literati for the gift certificate invoices for gift certificates that have gone unredeemed by customers.[52]  Fundamentally, both complaints address the same dispute over the same set of fees that Literati may or may not owe under the

---

[48] *Tulum Mgmt. USA LLC v. Casten*, 2015 WL 7456003, at *2 (Del. Ch. Nov. 20, 2015) (citing *Davis Int'l, LLC v. New Start Grp. Corp.*, 2005 WL 2899683, at *2 (Del. Ch. Oct. 27, 2005)).

[49] *Kurtin v. KRE, LLC*, 2005 WL 1200188, at *4 (Del. Ch. May 16, 2005).

[50] Mot. Dismiss 15.

[51] *See generally* Compl.

[52] *See generally* Amended Petition.

Agreement. These issues are functionally identical. Further, it cannot be disputed that the parties in both actions are identical.

### 2. THE DISTRICT COURT IN THE 126TH JUDICIAL DISTRICT OF TRAVIS COUNTY IS CAPABLE OF DOING PROMPT AND COMPLETE JUSTICE.

The final *McWane* factor is whether the court in the Texas Action can afford the parties prompt and complete justice. "Rendering justice entails accurately applying controlling law as well as ensuring that all parties necessary to a complete resolution are joined (or can be joined by service of process) in a competing action."[53] As a court of general jurisdiction,[54] the District Court is more than capable of affording the parties prompt and complete justice.[55] Delaware courts have previously recognized this to be true of Texas state courts.[56]

### 3. ALL OTHER PRACTICAL CONSIDERATIONS FAVOR A STAY.

As noted, in conducting a *McWane* analysis the Court will consider "other practical considerations relevant to promoting the efficient administration of justice

---

[53] *Brookstone Partners Acquisition XVI, LLC v. Tanus*, 2012 WL 5868902, at *6 (Del. Ch. Nov. 20, 2012).

[54] Tex. Const. art. V, § 8.

[55] *See Ritchie v. Huizenga Managers Fund, LLC*, 2017 WL 7803924, at *2 (Del. Super. Dec. 21, 2017) (noting the same as to the Circuit Court of Cook County, Illinois).

[56] *See Brookstone Partners Acquisition XVI, LLC*, 2012 WL 5868902 at *6; *Citrin Holdings LLC v. Cullen 130 LLC*, 2008 WL 241615, at *4 (Del. Ch. Jan. 17, 2008).

based on the Delaware Supreme Court's holding in" *Cryo-Maid*.[57] In doing so, "[t]he Court, [] must weigh the efficient administration of justice and analogous considerations to determine whether it would be 'extraordinarily expensive and cumbersome for a defendant to litigate a case in Delaware.'"[58]

The Texas court has already denied Follett's motion to dismiss in the Texas Action. Because the Court has already found that the Texas Action was first-filed and the Texas court is capable of doing prompt and complete justice, it makes little sense to force Defendant to litigate in both forums at the same time. Requiring the parties to do so would also create a risk that the courts in the Texas Action and the Delaware Action create findings inconsistent with one another.

---

[57] *Bright Data, Inc. v. Meta Platforms, Inc.*, 2023 WL 5322293, at *6 (Del. Super. Aug. 18, 2023) (internal quotations omitted).

[58] *Id.* (quoting *Martinez v. E.I. DuPont de Nemours and Co., Inc.*, 86 A.3d 1102, 1113 (Del. 2014)).

V.     **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss or stay under Rule 12(b)(3) is **GRANTED** and the matter is **STAYED** without prejudice to Follett's right to prosecute the Delaware Action depending on the outcome of the Texas Action.

**IT IS SO ORDERED.**

/s/ *Patricia A. Winston*
**Patricia A. Winston, Judge**

17